EXHIBIT 9

Case 1:06-cv-00310-RCL    Document 11-10    Filed 05/16/2006    Page 1 of 16



# Judicial Watch
*Because no one is above the law!*

**SENT VIA HAND DELIVERY AND**
**FACSIMILE (202) 616-8202**

May 12, 2006

Justin M. Sandberg, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Ben Franklin Station
Washington, D.C. 20044

Re:    *Judicial Watch, Inc. v. Secret Service*, Case No.: 06-0310 (JGP)

Dear Mr. Sandberg:

      This letter confirms our telephone conversation earlier today in which we advised you that the U.S. Secret Service's ("Secret Service's") production of documents to Judicial Watch, Inc. ("Judicial Watch") on May 10, 2006 failed to comply with the order issued by U.S. District Court Judge John Garrett Penn. This letter also puts the Secret Service on notice that if the Secret Service does not comply fully with the Court's order by the close of business on Monday, May 15, 2006, Judicial Watch will seek a Court order holding the Secret Service in contempt and requiring the Secret Service to pay sanctions to Judicial Watch.

      As you well know, Judicial Watch's FOIA request plainly sought "**all** White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House." See, letter dated January 20, 2006 to Latita Huff, U.S. Secret Service, from Christopher J. Farrell, Judicial Watch, attached as Exhibit 1. As you also know, the Court ordered the Secret Service to produce "any and **all** documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act request, without redactions or claims of exemption, on or before May 10, 2006." See, Joint Stipulation And Agreed Order, April 25, 2006 (emphasis added), attached as Exhibit 2. As we advised you, the Secret Service failed to produce **all** documents responsive to Judicial Watch's request, in particular Workers and Visitor Entry System ("WAVES") logs were not produced. Therefore, the Secret Service has directly violated the Court's order.

1

---

The Secret Service produced only two pages in response to Judicial Watch's FOIA request. The two pages of produced documents are entitled: "Access Control Records Report" and "NWHACS - Access Control Records" respectively. These documents are not visitor logs, but, instead, are two pages of newly-reproduced summaries of certain information in the Secret Service's database. This is confirmed by the fact that the two produced documents are dated March 6, 2006. These documents do not qualify as FOIA records and are not responsive to Judicial Watch's request.

Furthermore, the two pages produced by the Secret Service also lack important information. For example, there is no indication who Abramoff visited on March 6, 2001 and January 20, 2004. The Secret Service routinely requests and records this information for all visitors, and there is no reason to believe that the Secret Service deviated from its normal procedure in the case of Jack Abramoff. Indeed, the White House has publically acknowledged several Abramoff visits, such as May 19, 2001, Hanukkah receptions in 2001 and 2002, and some additional "staff-level meetings." The first three dates do not appear anywhere in the documents the Secret Service produced to Judicial Watch. The admitted facts by the White House concerning Abramoff's visits simply do not match up with the information on the documents produced to Judicial Watch.

Second, in an another FOIA case also involving White House visitor logs, the Secret Service produced WAVES logs, which are kept by the Secret Service in the ordinary course of business. No WAVES logs were produced to Judicial Watch concerning Abramoff's visits to the White House. WAVES logs are clearly a type of visitor log responsive to Judicial Watch's FOIA request, and **all** such visitor logs are required to be produced by the Court's order.

Third, Judicial Watch has received information that the Secret Service purposefully withheld the WAVES logs in the instant case at the direction of the White House. The Secret Services's deliberate withholding of these responsive records constitutes a flagrant violation of the Court's April 25, 2006 order, as well as a violation of the good faith bargaining Judicial Watch engaged in and relied on when it agreed to withdraw its motion for summary judgment in this case.

The Secret Service has made no effort to provide Judicial Watch with **all** of the Court-ordered, responsive records to Judicial Watch's FOIA request. Further, the Secret Service has made no effort to abide by the negotiated terms of the Joint Stipulation and, instead, has abused and exploited the good faith efforts of Judicial Watch.

In our telephone conversation today, you advised us that the Secret Service would not produce any other documents to comply with the Court's order. We hope the Secret Service will reconsider this position in light of this letter. Please be advised that the Secret Service must, by five o'clock p.m. on Monday, May 15, 2006, produce all documents responsive to Judicial Watch's January 20, 2006 FOIA request and in accordance with the Court's order. This includes all WAVES logs or other visitor logs identifying visits by Abramoff to the White House. If all

2

responsive documents are not received by Judicial Watch by that time, Judicial Watch will assume that the Secret Service has no intention of complying with the Court's order and will file a motion with the Court to compel the Secret Service to comply with the Court's order, to hold the Secret Service in contempt for intentional violation of the order and for sanctions pursuant to Fed.R.Civ.P. 11. Furthermore, if the Secret Service forces Judicial Watch to file a motion to compel, we also will request the Court to allow us to conduct discovery under oath of all persons at the Secret Service involved in this matter concerning the alleged direction from the White House to purposefully withhold responsive documents in direct violation of the Court's order.

If you have any questions regarding this matter, please contact me at (202) 646-5172.

Sincerely,

JUDICIAL WATCH, INC.

*Meredith Di Liberto*

Meredith L. Di Liberto
501 School Street, S.W.,
Suite 500
Washington, D.C. 20024
Tel.: (202) 646-5172
Fax.:(202) 646-5199

# EXHIBIT 1



**Judicial Watch**™
*Because no one is above the law!*

**URGENT**

**COPY**

<u>**VIA FACSIMILE AND CERTIFIED U.S. MAIL**</u>

January 20, 2006

Latita M. Huff
Disclosure Office
UNITED STATES SECRET SERVICE
Building 410
245 Murray Drive
Washington, DC  20223
(Fax. No.: 202-406-5154)
(Art. No.: 7005 1160 0000 8544 7716)

Re: <u>**Freedom of Information Act Request**</u>

Dear Sir/Madam:

Pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch, Inc. hereby requests that the United States Secret Service (hereafter "USSS") produce any and all agency records concerning, relating to, or reflecting the following subjects:

- All White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House.[1]

For purpose of this request, the term "record" shall mean: (1) any written, printed, or typed material of any kind, including without limitation all correspondence, memoranda, notes, messages, letters, cards, telegrams, teletypes, facsimiles, papers, forms, records, telephone messages, diaries, schedules, calendars, chronological data, minutes, books, reports, charts, lists, ledgers, invoices, worksheets, receipts, returns, computer printouts, printed matter, prospectuses, statements, checks, statistics, surveys, affidavits, contracts, agreements, transcripts, magazine or

---

[1] Neder Pickler. "White House Silent on Abramoff Meetings," Associated Press. January 17, 2006. [ http://news.yahoo.com/s/ap/20060118/ap_on_go_pr_wh/white_house_abramoff ]

501 School Street, SW • Suite 500 • Washington, DC 20024 • Tel: (202) 646-5172 • (888) JW-ETHIC
Fax: (202) 646-5199 • email: info@judicialwatch.org • Web Site: www.JudicialWatch.org

**URGENT**

Judicial Watch, Inc. FOIA Request
January 20, 2006
Page 2

newspaper articles, or press releases; (2) any electronically, magnetically, or mechanically stored material of any kind, including without limitation all electronic mail or e-mail, meaning any electronically transmitted text or graphic communication created upon and transmitted or received by any computer or other electronic device, and all materials stored on compact disk, computer disk, diskette, hard drive, server, or tape; (3) any audio, aural, visual, or video records, recordings, or representations of any kind, including without limitation all cassette tapes, compact disks, digital video disks, microfiche, microfilm, motion pictures, pictures, photographs, or videotapes; (4) any graphic materials and data compilations from which information can be obtained; (5) any materials using other means of preserving thought or expression; and (6) any tangible things from which data or information can be obtained, processed, recorded, or transcribed. The term "record" also shall mean any drafts, alterations, amendments, changes, or modifications of or to any of the foregoing.

**If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.**

If any responsive record or portion thereof is claimed to be exempt from production under FOIA, please provide sufficient identifying information with respect to each allegedly exempt record or portion thereof to allow us to assess the propriety of the claimed exemption. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). In addition, any reasonably segregable portion of a responsive record must be provided, after redaction of any allegedly exempt material. 5 U.S.C. § 552(b).

**Judicial Watch also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).**

Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. Judicial Watch, Inc. regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.

As a member of the news media, Judicial Watch uses the following means, among others, to publish and disseminate its distinctive work to the public:

(1)   Judicial Watch maintains an Internet site, www.JudicialWatch.org, where the public can review records obtained through FOIA and read editorial works prepared by Judicial Watch, Inc., including news releases, based on FOIA materials. This website is

Judicial Watch, Inc. FOIA Request
January 20, 2006
Page 3

**URGENT**

viewed by over 20,000 people per day on average, and on several occasions, has logged up to 1,000,000 visitors in a single day.

(2)     Judicial Watch also publishes a monthly newsletter in which it publishes its own editorial works and presents, analyzes, and explains information it obtains through FOIA. Judicial Watch, Inc.'s newsletter is sent to approximately 140,000 individuals each month. The organization also utilizes an e-mail Infonet service that sends out updates of Judicial Watch's activities over the Internet to almost 14,00 persons.

(3)     Judicial Watch also periodically publishes and disseminates its own distinct works in the form of books and reports. For example, in September 1998 Judicial Watch, Inc. published the *Interim Report on Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal from Elected Office*. This 145-page report was accompanied by nearly 4,000 pages of supporting documentation and was crafted, in part, from the raw materials obtained by Judicial Watch through FOIA requests, among other regular means. In August 1999, Judicial Watch published *Filegate Status Report*, which is 136 pages long and is supported by nearly 1000 pages of documentation. In March 2001, Judicial Watch, Inc. published *The Judicial Watch Florida Recount*, an independent, non-partisan analysis of the results of Florida's hotly contested 2000 Presidential election based upon an sampling of ballots reviewed by Judicial Watch pursuant to Florida's version of FOIA. In February 2002, Judicial Watch published *The Judicial Watch 2002 "State of the Union" Report, Bush Administration Ethics Enforcement: "A Failure of Leadership."* In September 2002, Judicial Watch, Inc. published *Fatal Neglect: The U.S. Government's Continuing Failure to Protect American Citizens from Terrorists*. Most recently on November 21, 2003, Judicial Watch produced *Analysis of GAO Testimony: US Postal Service – Clear Communication With Employees Needed Before Reopening of Brentwood Facility*. (GAO-04-2057T/October 23, 2003). Comptroller General of the United States David M. Walker, in a reply to Judicial Watch's *Analysis of GAO Testimony*, wrote on December 17, 2003, "We view Judicial Watch as an important accountability organization in Washington, D.C." On February 16, 2005 Judicial Watch was rated by the highly respected capitol newspaper *The Hill* as being one of the nation's top ten "watchdogs." Most recently, on June 29, 2005, Judicial Watch produced a special report US Border Patrol Survey Analysis, a report of an analysis of documents produced under FOIA.

Judicial Watch also publishes and disseminates its distinctive work by participating in public conferences and seminars, including its own "Ethics in Government" conferences held in Pasadena, California (1999), Washington, DC (2000), and Miami, FL (2001). Judicial Watch also works with other media organizations to publish and disseminate distinctive work to the public, and representatives of Judicial Watch appear frequently on nationally broadcast television and radio programs. Judicial Watch has been granted press credentials at a number of national conventions and other events.

Judicial Watch, Inc. FOIA Request
January 20, 2006
Page 4

**URGENT**

Consequently, Judicial Watch qualifies for a waiver of search fees as a member of the news media. *See National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). In fact, Judicial Watch has been recognized as a member of the news media in other FOIA litigation. *See Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000).

Judicial Watch also is entitled to a complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:

> shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch is a 501(c)(3), not-for-profit, educational organization, and, by definition, it has no commercial purpose. Judicial Watch exists to educate the public about the operations and activities of government, as well as to increase public understanding about the importance of ethics and the rule of law in government. The particular records requested herein are sought as part of Judicial Watch investigation into the visitation of lobbyists to the Bush administration during its first and second terms.

Courts applying the "public interest" fee waiver provision of FOIA typically take into account four factors in determining whether to grant a waiver: (1) whether the subject of the requested records concerns the operations or activities of government; (2) whether disclosure of the requested records is likely to contribute to an understanding of government operations or activities; (3) whether disclosure of the requested records will contribute to a "reasonably broad" audience and whether the requestor has the "ability and intention" to disseminate the information to the public; and (4) whether disclosure of the requested record will contribute "significantly" to the public understanding. *See D.C. Technical Assistance Org. v. HUD*, 85 F. Supp.2d 46, 48-49 (D.D.C. 2000); 28 C.F.R. § 16.11(k)(2)(i)-(iv). Request for "public interest" waivers are to be judged on a case-by-case basis." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

Without question, the subject-matter of the request concerns the operations and activities of government, namely the keeping of visitor logs of those who enter the White House for official business.

Disclosure of the requested records is likely to contribute to an understanding of government operations and activities and will appeal to a "reasonably broad" audience because the records relate directly to the facts and circumstances surrounding White House meetings with lobbyists, and USSS documentation of entry and exits for such meetings.

**URGENT**

Judicial Watch, Inc. FOIA Request
January 20, 2006
Page 5

Indeed, the taxpaying American public deserves full disclosure of the entry and exit of Jack Abramoff from the White House. According to recent press reports, President Bush stated initially that he did not know controversial lobbyist Jack Abramoff, however the two might have met at holiday parties. However, the White House recently admitted that indeed Abramoff had attended White House staff meetings. The public deserves to know the level of contact that Mr. Abramoff had with the White House, which would be accomplished by full disclosure of the dates and times that Abramoff entered and exited the White House for such policy related meetings.

Once Judicial Watch obtains the requested records, it intends to analyze them and disseminate the results of its analysis, as well as the records themselves, as a special written report. Judicial Watch will also educate the public via radio programs, Judicial Watch's website, and/or newsletter, among other outlets. It also will make the records available to other members of the media or researchers upon request. Judicial Watch has a proven ability to disseminate information obtained through FOIA to the public, as demonstrated by its long-standing and continuing public outreach efforts, including radio and television programs, website, newsletter, periodic published reports, public appearances, and other educational undertakings.

Finally, disclosure of the requested records will contribute significantly to the public's understanding because relatively little is known about the details of Abramoff's meeings with the White House. White House Press Secretary recently retorted to the inquiring reporters that he would not elaborate on the dates and times of the meetings, going on a "fishing expedition" and would only describe them as "staff level meetings." The records requested by Judicial Watch undoubtedly will shed additional light on this important matter.

Given these compelling circumstances, Judicial Watch is entitled to a public interest fee waiver of both search costs and duplication costs. Nonetheless, in the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch is willing to pay up to $350.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

We look forward to receiving the requested documents and a waiver of both search and duplication costs within twenty (20) business days.

Sincerely,

JUDICIAL WATCH, INC.

Christopher J. Farrell

501 School Street, SW • Suite 500 • Washington, DC 20024 • Tel: (202) 646-5172 • (888) JW-ETHIC
Fax: (202) 646-5199 • email: info@judicialwatch.org • Web Site: www.JudicialWatch.org

Print Story: White House Silent on Abramoff Meetings on Yahoo! News

Case: 1:06-cv-00319-RCL   Document 11-10   Filed 05/16/2006   Page 11 of 16

Page 1 of 1

# YAHOO! NEWS

Back to Story - Help

## White House Silent on Abramoff Meetings

 Associated Press

By NEDRA PICKLER, Associated Press Writer
Tue Jan 17, 9:24 PM ET

The White House is refusing to reveal details of tainted lobbyist Jack Abramoff's visits with President Bush's staff.

Abramoff had "a few staff-level meetings" at the Bush White House, presidential spokesman Scott McClellan said Tuesday. But he would not say with whom Abramoff met, which interests he was representing or how he got access to the White House.

Since Abramoff pleaded guilty two weeks ago to conspiracy, mail fraud and tax evasion charges in an influence-peddling scandal, McClellan has told reporters he was checking into Abramoff's meetings. "I'm making sure that I have a thorough report back to you on that," he said in his press briefing Jan. 5. "And I'll get that to you, hopefully very soon."

McClellan said Tuesday that he checked on it at reporters' requests, but wouldn't discuss the private staff-level meetings. "We are not going to engage in a fishing expedition," he said.

Senate Minority Leader Harry Reid, along with three other Democratic senators, wrote Bush a letter Tuesday asking for an accounting of Abramoff's personal contacts with Bush administration officials and acts that may have been undertaken at his request. "The American people need to be assured that the White House is not for sale," they wrote.

McClellan has said Abramoff attended three Hanukkah receptions at the White House, but corrected himself Tuesday to say there were only two — in 2001 and 2002.

McClellan said Bush does not know Abramoff personally, although it's possible the two met at the holiday receptions.

Abramoff was one of Bush's top fundraisers, having brought in at least $100,000 for the Bush-Cheney '04 re-election campaign and earning the honorary title "pioneer." The campaign took $6,000 of the contributions — which came directly from Abramoff, his wife and one of the Indian tribes he represented — and donated it to the American Heart Association. But the campaign has not returned the rest of the money Abramoff raised.

___

On the Net:

White House: http://www.whitehouse.gov

Copyright © 2006 The Associated Press. All rights reserved. The information contained in the AP News report may not be published, broadcast, rewritten or redistributed without the prior written authority of The Associated Press.

Copyright © 2006 Yahoo! Inc. All rights reserved.
Questions or Comments
Privacy Policy -Terms of Service - Copyright/IP Policy - Ad Feedback

# EXHIBIT 2



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06-CV-00310 (JGP) |
| ) | |
| UNITED STATES SECRET SERVICE, ) | |
| ) | |
| Defendant ) | |

## JOINT STIPULATION AND AGREED ORDER

The parties, by counsel, hereby stipulate and agree as follows:

1. Plaintiff hereby withdraws its pending motion for summary judgment;

2. Defendant shall produce any and all documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act request, without redactions or claims of exemption, on or before May 10, 2006.

3. Defendant shall have until and including May 15, 2006 to file any answer or otherwise respond to the Complaint.

1

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

CARL NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Branch Director

ELIZABETH J. SHAPIRO
Assistant Director
D.C. Bar No. 418925
Federal Programs Branch

_____/s/_____
JUSTIN M. SANDBERG
Trial Attorney
(Ill. Bar No. 6278377)
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Delivery Address
20 Massachusetts Avenue, N.W., Rm. 7224
Washington, D.C. 20001
Telephone: (202) 514-3489
Facsimile: (202) 616-8202

*Attorneys for Defendant*

_____/s/_____
PAUL J. ORFANEDES
D.C. Bar No. 429716
Judicial Watch, Inc.
501 School Street, S.W.
Suite 500
Washington, D.C. 20024
Telephone: (202) 646-5172
Facsimile: (202) 646-5199

*Attorneys for Plaintiff*

IT IS SO ORDERED.

Dated: _April 25, 2006_

_____
The Hon. John Garrett Penn, U.S.D.J.

2

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO                    3490
CONNECTION TEL              9*818*202p616p8202
CONNECTION ID
ST. TIME                    05/12 12:52
USAGE T                     03'50
PGS. SENT                   14
RESULT                      OK
```

# Judicial Watch, Inc.
*501 School Street, S. W., Suite 725*
*Washington, D. C. 20024*
*(202) 646-5172*
*Fax: (202) 646-5199*

FAX TRANSMISSION COVER SHEET

| | |
|---|---|
| **To:** | Justin Sandberg<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch |
| **Date:** | May 12, 2006 |
| **Fax:** | (202) 616-8202 |
| **Sender:** | Meredith Di Liberto |
| **Re:** | *Judicial Watch v. Secret Service*, Case No.: 06-00310 (JGP) |

*YOU SHOULD RECEIVE 14 PAGE(S), INCLUDING THIS COVER SHEET. IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 646-5172.*

# Judicial Watch, Inc.

*501 School Street, S. W., Suite 725*
*Washington, D. C. 20024*
*(202) 646-5172*
*Fax: (202) 646-5199*

FAX TRANSMISSION COVER SHEET

| | |
|---|---|
| To: | Justin Sandberg |
| | U.S. Department of Justice |
| | Civil Division, Federal Programs Branch |
| Date: | May 12, 2006 |
| Fax: | (202) 616-8202 |
| Sender: | Meredith Di Liberto |
| Re: | *Judicial Watch v. Secret Service,* Case No.: 06-00310 (JGP) |

*YOU SHOULD RECEIVE* 14 *PAGE(S), INCLUDING THIS COVER SHEET. IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 646-5172.*