# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00310 (JGP) |
| | ) | |
| UNITED STATES SECRET SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT
## UNITED STATES SECRET SERVICE TO COMPLY
## WITH THIS COURT'S ORDER AND FOR SANCTIONS

Plaintiff, Judicial Watch, Inc. ("Judicial Watch"), respectfully files this motion to compel the United States Secret Service ("Secret Service") to comply with the Joint Stipulation And Agreed Order issued by this Court on April 25, 2006 ("Order") and for sanctions against the Secret Service for its flagrant violation of the Order. The grounds for Judicial Watch's motion are set forth below and in its accompanying memorandum of law filed in support of its motion.

1. The Secret Service has defied the Court's Order directing the Secret Service to "produce any and all documents responsive to Plaintiff's [Judicial Watch's] January 20, 2006 Freedom of Information Act request, without redactions or claims of exemption, on or before May 10, 2006." *See*, Joint Stipulation And Agreed Order ("Order"), ¶ 2, attached as Exhibit 1. Judicial Watch's January 20, 2006 Freedom of Information Act ("FOIA") request (referenced in the Order) sought "any and all agency records concerning, relating to, or reflecting the following

1

subjects: All White House visitor logs from January 1, 2001 to present that reflect the entries and exits of lobbyist Jack Abramoff from the White House." *See*, letter dated January 20, 2006 from Christopher J. Farrell to Latita M. Huff, attached as Exhibit 2.

2. On May 10, 2006, the Secret Service produced a mere two pages of documents in purported compliance with the Court's Order. *See*, two pages of documents produced by the Secret Service, attached as Exhibit 3. The two pages produced by the Secret Service are titled, respectively, "Access Control Records Report" and "NWHACS - Access Control Records." *Id*. These two pages, which are dated March 3, 2006, are <u>not</u> White House visitor logs required to be produced under the Order. They are merely summaries of selected information from the Secret Service's database of information concerning only two visits by Jack Abramoff to the White House on March 6, 2001 and January 20, 2004. The Secret Service maintains White House visitor logs known as Workers Appointments and Visitors Entry System records ( "WAVES" logs) in the ordinary course of business. *See e.g.*, WAVES logs produced by the Secret Service in an unrelated case, attached as Exhibit 4. WAVES logs are clearly a type of visitor log responsive to Judicial Watch's FOIA request, and <u>all</u> such visitor logs are required to be produced by the Secret Service pursuant to the Court's Order. It is inconceivable that Abramoff's visits to the White House were not recorded as a matter of Secret Service routine in its WAVES logs. The Secret Service, nevertheless, failed to produce any WAVES logs to Judicial Watch concerning Abramoff's visits to the White House.

These WAVES logs would have identified the <u>other</u> visits to the White House by Mr. Abramoff. For example, the White House has publically acknowledged several Abramoff visits, such as on May 19, 2001, Hanukkah receptions in 2001 and 2002, and some additional "staff-

level meetings." *See*, January 30, 2006 article in *Time* magazine entitled "When George Met Jack; White House aides deny the President knew lobbyist Jack Abramoff, but unpublished photos shown to TIME suggest there's more to the story," attached as Exhibit 5; January 18, 2006 article by the *Associated Press* entitled "White House Silent on Abramoff Meetings," attached as Exhibit 6; February 20, 2006 article in *Time* magazine entitled "Abramoff's Kodak Moment," attached as Exhibit 7.   The summary documents the Secret Service produced to Judicial Watch on May 10, 2006 do <u>not</u> show the Abramoff visits on May 19, 2001 or on the dates of the Hanukkah receptions in 2001 and 2002.  Thus, the documents produced by the Secret Service fail to show Abramoff visits that the White House admits were made by Abramoff.

Furthermore, in a May 11, 2006 article in *The New York Times* entitled "Abramoff Visits in White House Logs Are Linked to Rove and a Budget Aide," reporter Philip Shenon wrote: "Two other administration officials, speaking on the condition of anonymity because of rules that generally bar them from speaking to reporters, said the White House had decided that the settlement of the lawsuit did not require other, more complete visitor logs to be made public. They said the more complete logs, known within the White House as WAVES records, an acronym for the Workers Appointments and Visitors Entry System, would have identified the other visits by Mr. Abramoff."  *See*, *The New York Times* article attached as Exhibit 8.

Not only do the summary documents produced by the Secret Service fail to disclose information about <u>all</u> of Abamoff's visits to the White House, but they even omit critical information about the Abramoff visits to the White House shown on the documents.  For instance, there is no indication who Abramoff visited on March 6, 2001 and January 20, 2004. The Secret Service routinely requests and records this information for all visitors, and there is no

3

reason to believe that the Secret Service deviated from its normal procedure in the case of Jack Abramoff.

Based upon publicly available information, it is clear that the summary documents produced by the Secret Service fail to disclose all of Abramoff's visits to the White House. Therefore, not only did the Secret Service violate the Court's Order by failing to produce all White House visitor logs pertaining to Abramoff's visits to the White House, but it also intentionally omitted producing critical information about other Abramoff visits to the White House.

3.   After reviewing the scant two pages produced by the Secret Service, Judicial Watch advised Justin Sandberg, counsel of record for the Secret Service, in a telephone conversation on May 12, 2006 that the Secret Service's document production failed to comply with this Court's Order because the Secret Service had failed to produce all documents responsive to Judicial Watch's FOIA request, including the WAVES logs.  In response, Mr. Sandberg told Judicial Watch that the Secret Service would not produce any additional documents concerning the Abramoff visits to the White House.

4.   In a further effort to persuade the Secret Service to show its good faith and abandon its stonewalling, Judicial Watch sent a letter to Mr. Sandberg confirming the substance of their May 12, 2006 telephone conversation and urging the Secret Service to reconsider its position so as to avoid the necessity of a motion to compel the Secret Service to comply with this Court's Order. *See*, letter dated May 12, 2006, from Meredith Di Liberto to Justin Sandberg, attached as Exhibit 9.  Judicial Watch received no response to this letter.  Unfortunately, the Secret Service continued to show its contempt for this Court's Order and its willingness to defy that Order in the

face of compelling evidence that the Secret Service was hiding information about Abramoff's visits to the White House at the direction of White House officials. Thus, the Secret Service made it necessary for Judicial Watch to file this motion to obtain compliance with the Court's Order.

5. The Secret Service's has failed to produce all documents responsive to Judicial Watch's FOIA request as expressly required by this Court's Order. Therefore, Judicial Watch's motion to compel the Secret Service to comply with the Order should be granted.

6. The Secret Service's contumacious conduct in refusing to comply with this Court's Order also warrants sanctions. By its stubborn stonewalling, the Secret Service has forced Judicial Watch to incur the time and expense of filing this motion to compel the Secret Service to obey the Court's Order. Such conduct justifies an award of sanctions to Judicial Watch in the amount of Judicial Watch's attorney's fees and costs.

7. Furthermore, if the Secret Service makes the indefensible representation to this Court that it has produced all responsive documents to Judicial Watch's FOIA request (as expressly required by the Order) despite the fact that it produced no WAVES logs or other visitor logs and despite the allegation of White House influence reported in *The New York Times*, then this Court should grant Judicial Watch other relief allowing Judicial Watch to take limited discovery of the Secret Service, including but not limited to depositions under oath of all Secret Service officials who had any involvement in this matter or who had any communications with the White House regarding this matter to determine whether the Secret Service is withholding existing, responsive documents or if the Secret Service purged its files of responsive documents after receiving Judicial Watch's FOIA request or in a manner inconsistent with its normal document retention

policy.

WHEREFORE, for all the foregoing reasons and for the reasons set forth in the accompanying Plaintiff's Memorandum In Support Of Its Motion To Compel The Secret Service To Comply With This Court's Order And For Sanctions, Judicial Watch's instant motion should be granted; sanctions should be awarded to Judicial Watch in the amount of its attorney's fees and costs in filing and prosecuting the instant motion; and Judicial Watch should be allowed to take limited discovery under oath of the Secret Service.

Respectfully submitted,

JUDICIAL WATCH, INC.


/s/ Meredith L. Di Liberto
D.C. Bar No. 487733
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172 (office)
(202) 646-5199 (fax)

*Counsel for Plaintiff*


Dated: May 16, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00310 (JGP) |
| | ) | |
| UNITED STATES SECRET SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO COMPEL DEFENDANT**
**UNITED STATES SECRET SERVICE TO COMPLY**
**WITH THIS COURT'S ORDER AND FOR SANCTIONS**

Plaintiff, Judicial Watch, Inc. ("Judicial Watch"), respectfully submits this memorandum

of law in support of its motion to compel the United States Secret Service ("Secret Service") to

comply with the Joint Stipulation And Agreed Order issued by this Court on April 25, 2006

("Order") and for sanctions and other relief against the Secret Service for its forcing Judicial

Watch to incur the time and expense of filing this motion to obtain compliance with the Order.

I.   **FACTUAL BACKGROUND**.

By letter dated January 20, 2006, Judicial Watch sent a Freedom of Information Act

("FOIA") request for records "concerning, relating to, or reflecting...[a]ll White House visitor

logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff

from the White House." *See* letter dated January 20, 2006 from Christopher J. Farrell of Judicial

Watch to Latita Huff of the Secret Service, attached as Exhibit 2.

When the Secret Service failed to respond to Judicial Watch's FOIA request within the

time allowed by law, Judicial Watch filed the instant action seeking to require the Secret Service to produce the above-described documents under the FOIA. Judicial Watch also moved for partial summary judgment against the Secret Service in this action.

Subsequently, Judicial Watch and the Secret Service negotiated a Joint Stipulation And Agreed Order, pursuant to which: (1) Judicial Watch agreed to withdraw its pending motion for partial summary judgment; (2) the Secret Service agreed to produce "any and all documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act request, without redactions or claims of exemption, on or before May 10, 2006"; and (3) the Secret Service was given until May 15, 2006 to file a responsive pleading to Judicial Watch's complaint. *See* Joint Stipulation And Agreed Order, attached as Exhibit 1. The Court signed and issued the Joint Stipulation And Agreed Order on April 25, 2006. *Id*.

On May 10, 2006, the Secret Service produced a mere two pages of documents in purported compliance with this Court's Order. *See* documents produced by the Secret Service, attached as Exhibit 3. The two pages produced by the Secret Service are titled, respectively, "Access Control Records Report" and "NWHACS - Access Control Records." These two pages, which are dated March 3, 2006, are mere summaries of selected information from the Secret Service's database of information concerning two visits by Jack Abramoff to the White House on March 6, 2001 and January 20, 2004. Importantly, these summaries omit critical information about Abramoff's visits to the White House.

For example, the White House has publicly acknowledged several Abramoff visits, such as on May 19, 2001, Hanukkah receptions in 2001 and 2002, and some additional "staff-level meetings." *See* January 30, 2006 article in *Time* magazine entitled "When George Met Jack;

2

White House aides deny the President knew lobbyist Jack Abramoff, but unpublished photos shown to TIME suggest there's more to the story," attached as Exhibit 5; January 18, 2006 article by the *Associated Press* entitled "White House Silent on Abramoff Meetings," attached as Exhibit 6; February 20, 2006 article in *Time* magazine entitled "Abramoff's Kodak Moment," attached as Exhibit 7.  The documents the Secret Service produced to Judicial Watch on May 10, 2006 do not show the Abramoff visits on May 19, 2001 or on the dates of the Hanukkah receptions in 2001 and 2002.  Thus, the documents produced by the Secret Service fail to show Abramoff visits that the White House admits were made by Abramoff.

Furthermore, the documents produced by the Secret Service omit critical information about the Abramoff visits to the White House shown on the documents.  For instance, there is no indication who Abramoff visited on March 6, 2001 and January 20, 2004.  The Secret Service routinely requests and records this information for all visitors, and there is no reason to believe that the Secret Service deviated from its normal procedure in the case of Jack Abramoff.

More importantly, the Secret Service failed to produce any visitor logs showing the visits made by Abramoff to the White House.  The Secret Service maintains Workers Appointments and Visitor Entry System ( "WAVES") logs in the ordinary course of business.  *See e.g.*, WAVES logs produced by the Secret Service in an unrelated case, attached as Exhibit 4. WAVES logs are clearly a type of visitor log responsive to Judicial Watch's FOIA request, and all such visitor logs are required to be produced by the Court's order.  It is inconceivable that Abramoff's visits to the White House were not recorded as a matter of Secret Service routine in its WAVES logs.  The Secret Service, nevertheless, failed to produce any WAVES logs to Judicial Watch concerning Abramoff's visits to the White House.

In a May 11, 2006 article in *The New York Times* entitled "Abramoff Visits in White House Logs Are Linked to Rove and a Budget Aide," reporter Philip Shenon wrote as follows: "Two other administration officials, speaking on the condition of anonymity because of rules that generally bar them from speaking to reporters, said the White House had decided that the settlement of the lawsuit did not require other, more complete visitor logs to be made public. They said the more complete logs, known within the White House as WAVES records, an acronym for the Workers Appointments and Visitors Entry System, would have identified the other visits by Mr. Abramoff." *See The New York Times* article attached as Exhibit 8.

After reviewing the scant two pages of documents produced by the Secret Service, Judicial Watch had a telephone conversation on May 12, 2006 with Justin Sandberg, counsel of record for the Secret Service, in which Judicial Watch advised that the Secret Service's document production failed to comply with this Court's Order because it failed to produce all documents responsive to Judicial Watch's FOIA request. Mr. Sandberg told Judicial Watch that the Secret Service would <u>not</u> produce any additional documents concerning the Abramoff visits to the White House.

To afford the Secret Service an opportunity to reconsider its untenable position in the face of compelling evidence that it violated this Court's Order and allegations that it intentionally withheld responsive documents at the direction of the White House, Judicial Watch then sent Mr. Sandberg a letter confirming the substance of this conversation and urging the Secret Service to comply fully with the Order so as to avoid forcing Judicial Watch to incur the time and expense of filing a motion to compel the Secret Service to comply with this Court's Order. *See* letter dated May 12, 2006, from Meredith L. Di Liberto to Justin Sandberg, attached as Exhibit 9.

4

The Secret Service issued no response to Judicial Watch's letter.  Instead, the Secret Service continued to stonewall and made it necessary for Judicial Watch to file this motion to compel and burden the Court with unnecessary litigation.

## II.    JUDICIAL WATCH'S MOTION TO COMPEL SHOULD BE GRANTED BECAUSE THE SECRET SERVICE HAS FAILED TO COMPLY WITH THIS COURT'S ORDER.

This Court's Order could not have been more clear: the Secret Service is required to produce to Judicial Watch any and all documents that concern, relate to or reflect any visit made to the White House by the now-disgraced lobbyist Jack Abramoff.  In the ordinary course of business, the Secret Service maintains WAVES logs of entries and exits made by visitors to the White House.  However, the Secret Service did not produce any WAVES logs to Judicial Watch. In fact, the Secret Service did not produce any visitor logs at all.  Instead, the only documents produced by the Secret Service were a mere two pages comprising an incomplete, post-hoc summary of selected information regarding two visits to the White House by Abramoff.  *See* Exhibit 3.  Given the clarity and breadth of this Court's Order, this seriously deficient production purports to represent that the Secret Service has no other information or documents about any other visits to the White House by Jack Abramoff.  Such an incredible representation does not pass the red-face test for several reasons.

First, the Secret Service maintains WAVES logs recording, among other things, the entries and exits of all visitors – including Jack Abramoff -- to the White House.  It is beyond doubt that these WAVES logs would show all visits made to the White House by Jack Abramoff during the period from January 2001 to the present.  Indeed, Bush administration officials have confirmed the existence of the WAVES logs reflecting other Abramoff visits to the White House.

5

"Two other administration officials, speaking on the condition of anonymity because of rules that generally bar them from speaking to reporters, said the White House had decided that the settlement of the lawsuit did not require other, more complete visitor logs to be made public. They said the more complete logs, known within the White House as WAVES records, an acronym for the Workers Appointments and Visitors Entry System, would have identified the other visits by Mr. Abramoff." *See The New York Times* article attached as Exhibit 8.

Furthermore, the White House has admitted that Abramoff visited the White House on more than two occasions. There is a photo of Abramoff with the President at the Eisenhower Executive Office Building on May 9, 2001. *Time* magazine reported:

> "Bush 'saw me in almost a dozen settings,' Abramoff wrote to a journalist friend in an e-mail that surfaced last week, 'and joked with me about a bunch of things, including details of my kids.'...Now a photograph of them together has finally come to light. The phot, taken on May 9, 2001, at the Eisenhower Executive Office Building adjacent to the White House, shows a bearded Abramoff in the background as Bush greets the lobbyist's client, Raul Garza...."

*See* Exhibit 7. The Secret Service produced no visitor logs or other documents to Judicial Watch reflecting this May 9, 2001 visit. Indeed, if the Secret Service has information regarding a March 6, 2001 visit to the White House by Abramoff, it should also have information regarding the subsequent May 9, 2001 appearance with the President.

The *Associated Press* also reported that "Abramoff had 'a few staff-level meetings' at the Bush White House, Scott McClellan said Tuesday...McClellan has said Abramoff attended three Hanukkah receptions at the White House, but corrected himself Tuesday to say there were only two in 2001 and 2002." *See* Exhibit 6. The Secret Service produced no WAVES logs or other documents to Judicial Watch reflecting Abramoff's visits to the White House to attend these

2001 and 2002 Hannukah receptions.  Again, if the Secret Service has information regarding a

March 6, 2001 visit to the White House by Abramoff (*see* Exhibit 3), it should also have

information regarding Abramoff's attendance at the subsequent Hannukah receptions in 2001 and

2002.

  *Time* magazine also reported on January 30, 2006 that "During 2001 and 2002, his

support for Republicans and connections to the White House won him invitations to Hannukah

receptions...McClellan has said Abramoff may have been present at 'other widely attended'

events.  He was also admitted to the White House complex for meetings with several staff

members, including one with presidential senior advisor Karl Rove, one of the most coveted

invitations in Washington."  *See* Exhibit 5.

  This publicly available information concerning the White House's own admissions about

Abramoff's visits belies any claim by the Secret Service not to have WAVES logs, visitor logs or

other documents or information about Abramoff's visits to the White House.  Most troubling,

however, is *The New York Times* report that Bush administration officials confirmed that the

White House directed the Secret Service <u>not</u> to produce the WAVES logs or other more complete

logs showing Abramoff's visits notwithstanding this Court's very clear Order requiring

production of such documents.

  The above evidence makes clear that the Secret Service's has failed to produce <u>all</u>

documents responsive to Judicial Watch's FOIA request as plainly required by this Court's

Order.  There is ample legal authority that this Court can enforce its own Orders.  In a line of

cases dating from at least 1812, the United States Supreme Court has consistently recognized the

"inherent powers of federal courts...which 'are necessary to the exercise of all others.' *United*

*States v. Hudson*, 7 Cranch 32, 34, L.Ed. 259 (1812)." *Roadway Express v. Piper*, 447 U.S. 752,

764 (1980). Because these powers are fundamental,

> "Courts of justice are universally acknowledged to be vested, by their very creation, with
> power to impose...submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat.
> 204, 227 (1821); *see also Ex parte Robinson*, 19 Wall. 505, 510 (1874). These powers
> are "governed not by rule or statute, but by the control necessarily vested in courts to
> manage their own affairs so as to achieve the orderly and expeditious disposition of
> cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962).

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

This Court has the power to enforce its Order in this action against the Secret Service. In

the interests of preserving its integrity and the integrity of the judicial process, the Court should

exercise such power here to compel the Secret Service to comply fully with the Order promptly

and produce all WAVES logs and visitor logs reflecting Abramoff's visits to the White House.

Therefore, Judicial Watch's motion to compel the Secret Service to comply with the Order

should be granted.

## III.    JUDICIAL WATCH SHOULD BE AWARDED SANCTIONS AGAINST THE SECRET SERVICE.

The Secret Service's contumacious conduct in defying this Court's Order justifies an

award of sanctions to Judicial Watch in the amount of its attorneys fees and costs in filing the

instant motion and such other relief as this Court may deem proper in light of the allegation that

the Secret Service withheld responsive documents at the direction of the White House.

After the Secret Service failed to comply with the Order on May 10, 2006, Judicial Watch

advised counsel for the Secret Service orally and in writing of the evidence demonstrating that the

Secret Service had failed to comply with the Order. *See* Exhibit 9. The purpose of such oral and

written communications was to urge the Secret Service to reconsider its untenable position in light

of the compelling evidence that it had intentionally withheld responsive documents at the

direction of the White House and to avoid forcing Judicial Watch to expend the time and expense

to file a motion to compel.  Despite Judicial Watch's good faith attempts to avoid litigation over

the Secret Service's noncompliance with the Court's Order, the Secret Service continued to

stonewall and refused to produce any additional documents despite the compelling evidence

discussed above.

This Court has the inherent power to protect its integrity and to prevent abuses of the

judicial process by holding those who violate its orders in contempt and ordering sanctions for

such violations.  *See Landmark Legal Foundation v. Environmental Protection Agency*, 272

F.Supp. 2d 70, 75 (D.D.C. 2003); *Cobell v. Babbitt*, 37 F.Supp. 2d 6, 9 (1999). As a predicate for

a contempt sanction, two conditions must be present: (1) the existence of a clear and specific

order of the Court; and (2) violation of that order by a party.  *See Landmark Legal Foundation*,

272 F.Supp.2d at 75.  Both of these conditions are present here.[1]  The monetary contempt sanction

sought here, Judicial Watch's attorneys fees and costs caused by the Secret Service's

contumacious conduct, is designed to compensate Judicial Watch, rather than punish the Secret

---

[1]       Although the evidence here would support a finding of that the Secret Service
intentionally withheld responsive documents, it should be noted that the Secret Service's
violation of this Court's Order need not have been willful to support a contempt finding or
warrant an award of attorney's fees and costs. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187,
191 (1949)(explaining that since the purpose of civil contempt is remedial, "it matters not with
what intent the defendant did the prohibited act."); *Food Lion, Inc. v. United Food &
Commercial Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997)(observing that "the law
is clear in this circuit that 'the [contemnor's] failure to comply with the court decree need not be
intentional" and that a "finding of bad faith on the part of the contemnor is *not* required."
(Emphasis in original)).  The Food Lion court also noted that bad faith is not required for an
award of attorney's fees as a sanction for failure to obey a court order. *Food Lion*, 103 F.3d at
1017, n.14.

Service.  *See Int'l International Union*, *UMW v. Bagwell*, 512 U.S. 821, 827-28 (1994).

Therefore, this Court should grant sanctions against the Secret Service and award Judicial Watch

the amount of its attorneys' fees and costs in filing and prosecuting this motion.

Additionally, this case presents unique and compelling facts that warrant other sanctions

or relief too.  Here, *The New York Times* has reported that Bush administration officials confirmed

that the White House directed the Secret Service <u>not</u> to produce the WAVES logs or other more

complete logs showing Abramoff's visits, notwithstanding this Court's very clear Order requiring

production of such documents.  *See* Exhibit 8.  If the Secret Service makes the indefensible

representation in pleadings to this Court that it has produced all responsive documents to Judicial

Watch despite the fact that it produced no WAVES logs or other visitor logs and despite the

allegation of White House influence reported in *The New York Times*, then this Court should grant

Judicial Watch other relief allowing Judicial Watch to take limited discovery of the Secret

Service, including but not limited to depositions <u>under oath</u> of all Secret Service officials who had

any involvement in this matter or who had any communications with the White House regarding

this matter.

The sanctions available to this Court to respond to abuses of its process are varied and

flexible.  "A primary aspect...is the ability to fashion an appropriate sanction for conduct which

abuses the judicial process."  *Chambers*, 501 U.S. at 44-45.  Thus, this Court has the inherent

power to fashion a remedy that addresses the allegation that the Secret Service may be

intentionally withholding responsive documents.  The appropriate remedy to address this

allegation is to take discovery <u>under oath</u> of the Secret Service officials involved in this matter.

IV.    **CONCLUSION**.

For all the foregoing reasons, the instant motion should be granted and sanctions should be awarded to Judicial Watch in the amount of its attorneys' fees and costs in filing and prosecuting the instant motion.   Additionally, Judicial Watch should allowed to take limited discovery under oath of the Secret Service to address the allegation that it has intentionally withheld responsive documents in violation of the Court Order.

Respectfully submitted,

JUDICIAL WATCH, INC.


/s/ Meredith L. Di Liberto
D.C. Bar No. 487733
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172 (office)
(202) 646-5199 (fax)

Counsel for Plaintiff

Dated: May 16, 2006

11