IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES SECRET SERVICE, | ) Civil Action No. 06-310 (JGP) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
AND FOR OTHER SANCTIONS**

**INTRODUCTION**

The Court should deny plaintiff's motion to compel the production of documents and for other sanctions because defendant has complied fully with the stipulation and agreed order that underlies this motion. In the order, defendant pledged to turn over all documents responsive to plaintiff's request. And on May 10, it did so. Plaintiff, however, dissatisfied with the number and type of documents that it received, prematurely filed this motion: It did not comply with Local Rule of Civil Procedure 7(m)'s requirement to meet and confer with defendant to determine whether defendant would oppose this motion, nor did it wait for the sworn declaration (and accompanying motion to dismiss) that it knew was imminently forthcoming. If plaintiff had done either of these things, it would have learned that its motion lacked merit, as defendant did

1

not (and does not) possess the documents that plaintiff seeks.[1]  Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff submitted a Freedom of Information Act (FOIA), 5 U.S.C. § 552, request to defendant for all records "concerning, relating to, or reflecting . . . [a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House."  FOIA Request, Jan. 20, 2006, at 1 (attached as Exhibit 2 to Plaintiff's Motion to Compel Defendant United States Secret Service to Comply with This Court's Order and For Sanctions [Plaintiff's Motion to Compel], May 16, 2006).  This request for "visitor logs" potentially implicated two different kinds of records, Access Control Records System (ACR) records and Worker and Visitor Entrance System (WAVES) records; the ACR and WAVES systems are the "two interrelated systems . . . for controlling and monitoring access to the White House Complex [Complex]."  Declaration of Special Agent Kathy J. Lyerly (Lyerly Decl.), May 16, 2006, at ¶ 6 (attached).  ACR records, which are generated when a person swipes a pass over an electronic pass reader located at an entrance to or exit from the Complex, include the following information:  the pass holder's name and badge number, the date and time of the swipe, and the post at which the swipe was recorded.  Id. at ¶ 7.  ACR records do not constitute a comprehensive catalog of visits to the Complex, as in certain circumstances a person can enter and exit without swiping a pass across a pass reader.  See id. at ¶ 16.  WAVES records, which

---

[1] Plaintiff's assertion that defendant stonewalled and forced it to file this motion, therefore, is empty rhetoric.  See Plaintiff's Memorandum of Law in Support of Its Motion to Compel Defendant United States Secret Service to Comply with This Court's Order and For Sanctions at 5.  Plaintiff unnecessarily rushed to judgment, and, thus, the fault for plaintiff's motion lies not with defendant, but with itself.

consist of records generated when information is submitted to defendant about workers and visitors whose business requires their presence at the Complex, include information in addition to that included in ACR records. Id. at ¶ 8.

One month after submitting its FOIA request, plaintiff filed the instant suit. Complaint for Declaratory and Injunctive Relief, Feb. 22, 2006. The parties eventually entered into a stipulation and agreed order, which was signed by the Court. Stipulation and Agreed Order, April 25, 2006. In this stipulation, defendant agreed to release "any and all documents responsive to Plaintiff's January 20, 2006 [FOIA] request, without redactions or claims of exemption, on or before May 10, 2006."[2] Id. at 1. On May 10, in accord with the stipulation and agreed order, defendant produced two pages of ACR records, which were the only two responsive documents found. See Lyerly Decl. at ¶¶ 14-15, 17. These records show that Mr. Abramoff visited the Complex on March 6, 2001 and January 20, 2004. Id. at ¶ 14. Defendant does not possess any WAVES records corresponding to these visits, as "[i]t has been the longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days" and then erase the WAVES records from its computer system. Id. at ¶ 10.[3] After producing the responsive records, and ascertaining that plaintiff would not agree to voluntarily dismiss its suit, defendant – with plaintiff's consent – moved for, and was granted, a short extension of time, until May 16, 2006, to respond to plaintiff's complaint.

---

[2] Defendant did not then and does not now concede that either WAVES or ACR records are "agency records" under FOIA. See 5 U.S.C. § 552.

[3] The Defendant has not withheld in whole or in part any document (i.e., ACR or WAVES record) located in response to plaintiff's request. Lyerly Decl. at ¶ 18.

Displeased with the number and kind of documents that it received, but without knowing the facts surrounding the production, plaintiff filed the instant motion to compel and for other sanctions, asking the Court to exercise its inherent power to remedy defendant's alleged failure to comply with the court order. Plaintiff's Motion to Compel. Plaintiff contends that defendant has violated the stipulation and agreed order by withholding responsive documents: "The Secret Service has failed to produce all documents responsive to Judicial Watch's FOIA request as expressly required by this Court's Order." Id. at ¶ 5. It supports this contention with four arguments: (1) since WAVES records are created, defendant must be improperly withholding them; (2) a New York Times article establishes that defendant has purposefully withheld records; (3) defendant must be withholding records because the White House has acknowledged visits by Mr. Abramoff that are not reflected in the documents that have been released; and (4) the records released to plaintiff are not "visitor log" records, but partial, post hoc summaries of such records. Plaintiff's Memorandum of Law in Support of Its Motion to Compel Defendant United States Secret Service to Comply with This Court's Order and For Sanctions (Plaintiff's Memorandum) at 5-8. To remedy defendant's supposed noncompliance, plaintiff asks the Court to exercise its inherent power to ensure that its orders are followed by compelling production of responsive documents, citing defendant for contempt, awarding attorney's fees to plaintiff, and permitting discovery. Id. at 8-10.

**ARGUMENT**

**DEFENDANT HAS NOT VIOLATED THE COURT ORDER AS IT HAS PRODUCED ALL DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST**

To be entitled to any relief pursuant to the Court's inherent power, plaintiff must establish, by at least a preponderance of the evidence, that defendant violated the Court order (i.e., the stipulation and agreed order). Plaintiff cannot make this showing. By releasing all responsive records found after a reasonable search, defendant fully complied with the order.[4] Plaintiff's arguments to the contrary are the product of speculation and are contradicted by the facts of this case.

**I.      Legal Standard for Obtaining Relief Pursuant to Courts' Inherent Powers**

Courts possess inherent powers to "protect their integrity and prevent abuses of the judicial process." Shepherd v. American Broadcasting Companies, 62 F.3d 1469, 1474 (D.C. Cir. 1995). See also Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991). But the Supreme Court has cautioned that such powers should be exercised carefully: "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). See also Chambers, 501 U.S. at 44 (warning courts to exercise inherent powers with "restraint and discretion" because of their "potency").

The different forms of relief requested by plaintiff (i.e., the order to compel, the order for a contempt citation, and the rest) are different suggested remedies for the alleged abuse of the judicial process, namely, the violation of the order, that plaintiff contends occurred in this case.

---

[4] For an explanation of why the search was reasonable, see Defendant's Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, May 16, 2006.

See Shepherd, 62 F.3d at 1478; see Natural Gas Pipeline Co. v. Energy Gathering, Inc., 2 F.3d 1397, 1409 n.34 (5th Cir. 1993) (discussing courts' inherent powers to compel document production). Standards of proof vary depending on the nature of the relief sought (i.e., depending on whether it is remedial like a motion to compel or penal like a contempt citation), but at a minimum, to secure redress under the Court's inherent power, plaintiff must establish by a preponderance of the evidence that defendant violated the court order.[5] See Shepherd, 62 F.3d at 1478; Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, 103 F.3d 1007, 1016 (D.C. Cir. 1997).

> II.  **Defendant Did Not Violate the Court Order and, Therefore, Plaintiff Is Not Entitled to Any Relief**

None of plaintiff's arguments supports the proposition that defendant violated the court order. Plaintiff argues that defendant must be withholding WAVES records corresponding to the visits reflected in the ACR records because WAVES records are created as a matter of course. This argument fails because it is logically and factually flawed. See Plaintiff's Memorandum at 5. That WAVES records are generated does not mean that defendant possessed such records at the time of the FOIA request. And, in fact, defendant did not possess WAVES records corresponding to the visits to the Complex reflected in the ACR records because (even if they existed) it had transferred them to the White House and erased them from its system long before it received plaintiff's request: "It has been the longstanding practice of the Secret Service to

---

[5] To obtain a contempt citation or attorney's fees, plaintiff must establish by clear and convincing evidence that defendant violated the Court's order. Shepherd, 62 F.3d at 1478. As will be explained below, plaintiff cannot establish by a preponderance of the evidence that defendant violated the order. Thus, it is necessarily true that plaintiff cannot make the higher clear and convincing evidence showing necessary to secure a contempt citation or attorney's fees.

transfer WAVES records on CD-ROM to the White House every 30 to 60 days. . . [O]nce the Secret Service transfer[s] the WAVES records, [it] ensure[s] that those records [are] erased from its computer system." Lyerly Decl. at ¶ 10.  According to the ACR records, Mr. Abramoff visited the Complex on March 6, 2001 and January 20, 2004.  Id. at ¶ 14.  Defendant received plaintiff's FOIA request on January 23, 2006, id. at ¶ 4, more than two years after the last visit shown in the ACR records.  Thus, pursuant to defendant's standard practice, any corresponding WAVES records (if they existed) had long since been erased from its computers.[6]  See id. at ¶¶ 10-11.

Plaintiff attempts to bolster this argument by attaching WAVES records that it allegedly procured from defendant in connection with another, unrelated matter.  See WAVES Record (attached as Exhibit 4 to Plaintiff's Memorandum).  But those records are from 1993 to 1996 and were produced to plaintiff in connection with a lawsuit filed in 1996.  See id.  As the Lyerly Declaration makes clear, defendant did not at the time of the request in early 2006 (and does not now) possess any WAVES records created prior to October 2004 and found no responsive records that were created after October 2004.  Lyerly Decl. at ¶¶ 10, 11, 15.

Plaintiff also argues that a New York Times Article establishes that defendant is withholding records.  Plaintiff's Memorandum at 7.  In a May 11, 2006 article, the Times reported that two anonymous administration officials said that "the White House had decided that settlement of the lawsuit [i.e., presumably, the stipulation and agreed order] did not require other, more complete visitor logs [i.e., WAVES records] to be made public."  Philip Shenon,

---

[6] As emphasized by the Secret Service, no other records are being withheld in this case. Lyerly Decl. at ¶¶ 15, 17-18.

"Abramoff Visits in White House Logs Are Linked to Rove and a Budget Aide," N.Y. Times, May 11, 2006 (attached as Exhibit 8 to Plaintiff's Motion to Compel). Plaintiff interprets the quoted text to mean that "the White House directed the Secret Service not to produce WAVES logs or other more complete logs showing Abramoff's visits."[7] Plaintiff's Memorandum at 7.

This argument is not persuasive because it depends on inadmissible evidence and rests on a misinterpretation of the alleged statements of the unnamed sources. The statements in the newspaper article are unsworn, out-of-court statements offered for the truth of the matter asserted, and the article itself is an unsworn, out-of-court statement offered for the truth of the matter asserted. See Fed. R. Evid. 801(c). Thus, the statements are inadmissible double hearsay, see, e.g., Green v. Baca, 226 F.R.D. 624, 638 (C.D. Cal. 2005); see also Fed. R. Evid. 802, and cannot support a finding that defendant violated the court order. But even if the statements were admissible (and true), they would not support plaintiff's argument.[8] Given the evidence about the handling of WAVES records (i.e., they are transferred to the White House) and defendant's statement that it is not withholding WAVES records, see Lyerly Decl. at ¶¶ 10, 18, the fact that WAVES records were not included in the release implies nothing about any decision by defendant to withhold records; the statements in the article do not say otherwise. Plaintiff's contrary interpretation of them should be rejected: It contradicts the facts (that defendant does not possess and is not withholding WAVES records), is founded on unadulterated speculation, and assumes improper conduct on the part of defendant – in contravention of the presumption of

---

[7] There are no "other more complete" kinds of logs. Lyerly Decl. at ¶ 6.

[8] Defendant does not know who these unnamed sources may be and does not admit that the statements that are attributed to them are true.

regularity that attaches to government officials' actions.[9]  See, e.g., National Archives and Records Admin. v. Favish, 541 U.S. 157, 174 (2004).

The argument that gaps in the ACR records demonstrate that defendant is withholding records is also a nonstarter.  Plaintiff contends that defendant must be withholding records because the ACR records do not reflect certain visits to the Complex that the White House has acknowledged were made by Mr. Abramoff, such as for Hanukkah receptions in 2001 and 2002.  Plaintiff's Memorandum at 6.  This argument assumes (with no factual support) that ACR records are all-encompassing.  Defendant, however, has acknowledged that ACR records do not constitute a comprehensive catalog of visits to the Complex:  "There are a variety of reasons why ACR records are not comprehensive as to entries and exits."  Lyerly Decl. at ¶ 16.  To take one example, "guests who visit the complex in a prearranged group for an official function or reception may not appear on the ACR records" because "[i]n some of those instances visitors are granted entry without going through the turnstiles [i.e., without having to swipe their passes across the pass readers]."  Id.  Given this example from Special Agent Lyerly's declaration, it is not surprising that there are no ACR records reflecting Mr. Abramoff's visits to the Complex for the Hanukkah receptions in 2001 and 2002.  In any event, it would not make sense for defendant to purposefully withhold records regarding visits that already have been publicly acknowledged.  The short of the matter, then, is this:  plaintiff's argument flows from pure speculation (there is no evidence that ACR records are comprehensive), contradicts the facts of the case (ACR records

---

[9] All of plaintiff's arguments ignore the presumption of regularity accorded to public officials' actions.

are not comprehensive and are not being withheld), and makes no sense (it would be irrational to withhold these records).

Finally, the Court should reject plaintiff's argument that defendant has turned over only partial, post hoc summaries of visitor log records and therefore has violated the order. Plaintiff's Memorandum at 5. It is nonsense. The documents released to plaintiffs were ACR records, which are one of the two kinds of records that are generated by the systems that "control[ ] and monitor[ ] access to the White House Complex." Lyerly Decl. at ¶¶ 6, 14, 19.

## CONCLUSION

For the above stated reasons, the Court should deny plaintiff's motion.[10]

Dated: June 1, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

CARL J. NICHOLS
Deputy Assistant Attorney General

JOSEPH H. HUNT
Branch Director

OF COUNSEL:

MOLLY WEBER
United States Secret Service

s/ Justin M. Sandberg
ELIZABETH J. SHAPIRO
(D.C. Bar No. 418925)
Assistant Branch Director
JUSTIN M. SANDBERG

---

[10] The Court also should dismiss plaintiff's complaint as moot. See Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Defendant's Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, May 16, 2006.

(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-3489
Facsimile: (202) 616-8202
E-mail: justin.sandberg@usdoj.gov

<u>Attorneys for Defendant</u>