IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:06-CV-00310 (JGP) |
| UNITED STATES SECRET SERVICE, | ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION AND
REPLY IN SUPPORT OF ITS MOTION TO COMPEL**

Plaintiff, Judicial Watch, Inc. ("Judicial Watch"), by counsel, respectfully submits this opposition to Defendant U.S. Secret Service's ("Secret Service") motion to dismiss (Docket No. 14) and reply in support of its motion to compel (Docket No. 12). As grounds therefor, Plaintiff states as follows:

**MEMORANDUM OF LAW**

I.   **Introduction.**

On January 20, 2006, Judicial Watch sent the Secret Service a Freedom of Information Act ("FOIA") request for records "concerning, relating to, or reflecting...[a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House." When the Secret Service failed to respond to Judicial Watch's FOIA request within the time allowed by law, Judicial Watch filed the instant action seeking to require the Secret Service to produce the above-described documents under the FOIA. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Judicial Watch moved for partial

summary judgment.

Subsequently, Judicial Watch and the Secret Service negotiated a Joint Stipulation And Agreed Order, pursuant to which: (1) Judicial Watch agreed to withdraw its pending motion for partial summary judgment; (2) the Secret Service agreed to produce "any and all documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act request, without redactions or claims of exemption, on or before May 10, 2006"; and (3) the Secret Service was given until May 15, 2006 to file a responsive pleading to Judicial Watch's complaint.  The Court signed and issued the Joint Stipulation And Agreed Order on April 25, 2006.

On May 10, 2006, the Secret Service produced a mere two pages of documents in purported compliance with this Court's Order.  On May 12, 2006, Judicial Watch telephoned Justin Sandberg, counsel for the Secret Service, to discuss the inadequacy of the May 10, 2006 production.  During this conversation, Judicial Watch advised Mr. Sandberg that it did not view the two page production as constituting substantial compliance with the Court's April 25, 2006 and, unless the order was fully complied with by the close of business Monday, May 15, 2006, Judicial Watch would seek relief from the Court, including a possible finding of contempt and sanctions.  Judicial Watch commemorated this conversation in a letter, also dated May 12, 2006, which was hand-delivered to Mr. Sandberg, as well as faxed.[1]  As of the close of business on May 15, 2006, Judicial Watch received no substantive response from the Secret Service to its May 12, 2006 letter.

---

[1] While it is true that Judicial Watch inadvertently forgot to include a Rule 7(m) certificate with its motion to compel, Judicial Watch substantially complied with Local Rule 7(m) in the May 12, 2006 conversation with opposing counsel, as well as the subsequent letter. *See* Exhibit 9 to Motion to Compel.

II.    **Argument.**

    A.    **The Facts Demonstrate That Judicial Watch Has Not Received All Responsive Documents in Compliance With the Court's Order.**

The facts in this case demonstrate that Judicial Watch has not received all documents responsive to its FOIA request. Two consequences result from this failure: (1) the case is not mooted; and (2) the Secret Service is in direct contravention of this Court's April 25, 2006 order.

<u>First</u>, the Access Control Records System ("ACR") records are incomplete. As demonstrated earlier, and seemingly acknowledged by the Secret Service in its opposition, the White House has publically acknowledged several Abramoff visits. *See* Defendant's Opposition to Plaintiff's Motion to Compel and For Sanctions ("Opposition") at 7. These visits, which included a May 19, 2001 visit, Hanukkah visits in 2001 and 2002, and some additional "staff-level" meetings, did not appear in the documents released by the Secret Service on May 10, 2006. *See* Plaintiff's Motion to Compel Defendant Secret Service to Comply With This Court's Order and For Sanction ("Motion to Compel") at 2-3.

Unlike the Worker and Visitor Entry System ("WAVES") logs, the ACR records are not transferred or destroyed by the Secret Service and should, therefore, be complete. *See* Declaration of Kathy J. Lyerly at ¶¶ 7, 12, 14. The Secret Service asserts that the incomplete production can be explained by a "variety of reasons," including (but presumably not limited to):

> [G]uests who visit the complex in a prearranged group for an official function or reception may not appear in the ACR records. In some of those instances visitors are granted entry without going through the turnstiles.

Lyerly Declaration at ¶ 16.  This assertion is nothing short of astounding.  The Secret Service claims that access to the White House complex is possible without going through a security check, as long as the visitors come in groups.  Considering the state of heightened security in this nation, especially surrounding the President and other members of government, this claim is preposterous.

<u>Second</u>, the Secret Service's allegedly "longstanding practice" of transferring and destroying WAVES logs is contrary to the facts.  The Secret Service claims that it did not produce responsive WAVES logs because:

> It has been the longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days. ... Once the Secret Service transferred the WAVES records, the Secret Service ensured that those records were erased from its computer system.

Lyerly Decl. at ¶ 10.  However, in 1998, in the case of *Alexander v. FBI*, Case No. 96-2123, Judicial Watch subpoenaed the Secret Service for records relating to White House visitor logs.  In response to that subpoena, the Secret Service produced WAVES logs from 1996.  *See* Exhibit 4 to Motion to Compel.  Two conclusions are inescapable: (1) the records were two years old when the Secret Service produced them which is clearly more than 30 or 60 days; and (2) the records were obtained in 1998 which makes the Secret Service's "longstanding practice," if accurate, no more than eight years old.

These facts are not speculative, as the Secret Service alleges.  At best, these facts fail to answer the questions posed by Judicial Watch in its motion to compel and raise more questions.  It is the Secret Service's FOIA obligation to conduct an adequate search, and the facts in this case fail to demonstrate that the Secret Service has fulfilled its FOIA obligations.

The Secret Service has not fully complied with the Court's April 25, 2006 order, and the facts bear this out. The Secret Service should be compelled to comply with this Court's order and should be sanctioned for its noncompliance. These facts also demonstrate that this case is not moot and the Secret Service's motion to dismiss should be denied.

### B. The Secret Service's Attempt to Circumvent its FOIA Obligations Is Contrary to D.C. Circuit Precedent And Contrary to Congress' Intent Behind FOIA.

It is not disputed that the Secret Service is subject to FOIA. In fact, the Secret Service's own website contains a page describing FOIA, as well as information on how to make a FOIA request, reference guides and annual FOIA reports.[2] It is clear that as an agency subject to FOIA, Secret Service records are, therefore, also subject to FOIA.[3] As an agency subject to FOIA, the Secret Service is required by the statute to adhere to all of its FOIA obligations. The Secret Service cannot circumvent its FOIA obligations by attempting to transfer and/or destroy its records, and the Secret Service's now publicly acknowledged practice of circumvention is nothing short of disturbing.

In both its motion to dismiss and its opposition to Judicial Watch's motion to compel, the Secret Service has described, with astounding honesty, that the reason it does not have WAVES records for the time period of Judicial Watch's FOIA is because it regularly transfers the information to a non-FOIA location and then destroys its records. *See* Lyerly Declaration at ¶10

---

[2] The website can be located at: http://www.ustreas.gov/usss/foia.shtml.

[3] Both ACR records and WAVES logs are created by the Secret Service in the normal course of business and as part of its protective mission. The Secret Service's unwillingness to acknowledge that ACR records and WAVES logs are agency records does not change the simple fact that FOIA declares them as such.

(attached to both pleadings). The ease at which the Secret Service relays this information speaks volumes about its disregard for FOIA. The Secret Service cannot simply circumvent its FOIA obligations by transferring its records to a location not subject to FOIA and then destroying its records. The law of this Circuit makes this very clear.

In *McGehee v. Central Intelligence Agency,* 697 F.2d 1095, 1105-1109 (D.C. Cir. 1983), the District of Columbia Circuit reviewed and applied the U.S. Supreme Court's discussion of the meaning of "agency records" under FOIA. In *McGehee*, the Court reflected on the lack of a definition in the FOIA statute itself and the surprisingly sparse legislative history on the subject of "agency records" as well. *Id.* at 1106. The Court concluded that an "agency record" is determined by looking at the "general principles that underlie the Act [FOIA] as a whole." *Id.* at 1108. Specifically, the Court held:

> It has often been observed that the central purpose of the FOIA is to 'open [] up the workings of government to public scrutiny." One of the premises of that objective is the belief that 'an informed electorate is vital to the proper operation of a democracy.' A more specific goal implicit in the foregoing principles is to give citizens access to the information on the basis of which government agencies make their decisions, thereby equipping the populace to evaluate and criticize those decisions. Each of these objectives – and particularly the last – would be best promoted by a rule that *all records in an agency's possession, whether created by the agency itself or by other bodies covered by the Act, constitute 'agency records*.'

*Id.* at 1108-09 (emphasis in original).

The general principles of FOIA led the Court to conclude that a more restrictive rule would effectively result in a very different FOIA. Concluding this point the Court held:

> If records obtained from other agencies could not be reached by a FOIA request, an agency seeking to shield documents from the public could transfer the documents for safekeeping to another government department. It could thereafter decline to afford requesters access to the materials on the ground that it lacked

6

> 'custody' of or 'control' over the records and had no duty to retrieve them. The agency holding the documents could likewise resist disclosure on the theory that, from its perspective, the documents were not 'agency records.' **The net effect could be wholly to frustrate the purposes of the Act [FOIA].**

*Id.* at 1109 (emphasis added). This is precisely what the Secret Service is attempting to do in this case – wholly frustrate the purposes of FOIA by transferring the WAVES logs to the White House and destroying its own records, and then claiming they no longer have possession of responsive materials.

In *Bureau of Nat'l Affairs v. Dep't of Justice*, 742 F.2d 1484, 1490-91 (D.C. Cir. 1984), the Court, reflecting on the Supreme Court's "control test" articulated in *Forsham v. Harris*, 445 U.S. 169 (1980), stated that the focus of "agency records" should be the "function or use of the document within the agency." The Court further stated that the "mere incidence of location" was not the determinative factor, but, rather, what was determinative was whether there was "some 'nexus' between the agency and the documents." *Id.* at 1491 (internal citation omitted).

Under the *Forsham* and *Bureau of Nat'l Affairs* holdings, the inquiry into whether the Secret Service's WAVES logs are "agency records" is an inquiry into the function and purpose of the WAVES logs, not their present location. The WAVES logs, as well as the ACR records, serve a law enforcement purpose. The Secret Service's protective mission, which includes providing security for the White House complex, presumably creates the WAVES logs and ACR records for the purpose of screening White House visitors and maintaining a record of who and when visitors come to the White House complex. The nexus between the WAVES logs and the Secret Service is clear: protection of those in the White House complex. However, the White House itself is not a law enforcement agency and, therefore, the nexus is lost. The purpose for

which the logs were created does not translate to the White House.

As held by the Supreme Court and the D.C. Circuit, the Secret Service's lack of physical possession of the WAVES logs due to transferring the logs does not change the status of the WAVES logs as agency records. *See Ryan v. Dep't of Justice*, 617 F.2d 781, 785(D.C. Cir. 1980) ("A simple possession standard would permit agencies to insulate their activities from FOIA..."). The Secret Service cannot circumvent FOIA law by transferring documents and then claiming, as it does now, that it does not possess the responsive records.

The Secret Service should be compelled to comply immediately with this Court's April 25, 2006 order by retrieving the records at issue from the White House. The Secret Service also should be sanctioned for its noncompliance. Its cavalier actions serve as a further example of why sanctions should be awarded to Judicial Watch in the amount of its attorneys fees and costs. The blatant disregard for FOIA and this Court's April 25, 2006 order should not be swept under the rug. And, as the case law demonstrates, subject matter jurisdiction has been retained and the Secret Service's motion to dismiss should be denied.

**III.    Conclusion.**

For the foregoing reasons, and for the reasons set forth in Judicial Watch's motion to compel, Secret Service's motion to dismiss should be denied and it should be compelled to comply with the Court's April 25, 2006 order. The Court should also grant an award of sanctions to Judicial Watch in the amount of its attorneys fees. The Court should also grant Judicial Watch other relief allowing Judicial Watch to take limited discovery of the Secret Service, including but not limited to depositions under oath of all Secret Service officials who had any involvement in this matter or who had any communications with the White House regarding this matter, to

determine whether the Secret Service is withholding existing, responsive documents or if the Secret Service purged its files of responsive documents after receiving Judicial Watch's FOIA request or in a manner inconsistent with its normal document retention policy.

                                              Respectfully submitted,

                                              JUDICIAL WATCH, INC.

                                              /s/ Meredith L. Di Liberto
                                              D.C. Bar No. 487733
                                              Paul J. Orfanedes
                                              D.C. Bar. No. 429716
                                              Suite 500
                                              501 School Street, S.W.
                                              Washington, D.C.  20024
                                              (202) 646-5172

                                              Attorneys for Plaintiff