**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-310 (JGP) |
| ) | |
| UNITED STATES SECRET SERVICE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION**

**INTRODUCTION**

This case is moot. Plaintiff has obtained all that it could hope to obtain from a judgment

of this Court: the production to it of all relevant documents found after a reasonable search.[1]  In

fact, plaintiff now has received more than that, namely, all relevant documents found after two

searches, the first of which was reasonable and the second of which far exceeded what is required

by FOIA. Indeed, defendant chose to have a special team of investigators under the direction of

defendant's Office of Inspection conduct a second search, and that team scoured two relevant

computers to determine their contents, going so far as to write a special program which scanned

the hard drives for any references to the name Jack Abramoff. The Court could not give plaintiff

anything more than defendant has already provided it.

---

[1] Defendant has released to plaintiff today documents containing Worker and Visitor
Entrance System (WAVES) data for Jack Abramoff relating to six separate appointments and
Access Control Records System (ACR) data matching the data included in the ACR records that
defendant previously released to plaintiff.

None of plaintiff's arguments to the contrary has merit.  Plaintiff argues that defendant conducted an inadequate search.  But as previously demonstrated and as set forth in more detail below, defendant has conducted a more extensive search than required by the Freedom of Information Act (FOIA).  Plaintiff's next two arguments are that the alleged incompleteness of the Access Control Records System (ACR) records that have been released, and defendant's release of Worker and Visitor Entrance System (WAVES) records eight years ago, demonstrate that defendant must be withholding records.  These arguments are based on nothing more than unsupported speculation.  Speculation cannot trump a sworn declaration from an agency, and Special Agent Lyerly's declarations establish that defendant has turned over all responsive records found after not one, but two searches.  Plaintiff's last argument – that WAVES records transferred from defendant to the White House and possessed by the White House are agency records under the FOIA that the Court should compel defendant to retrieve – lacks legal support. It is well-established that the FOIA does not obligate an agency to retrieve records from another agency, and it certainly does not obligate defendant to retrieve WAVES records from the White House:  Defendant did not possess or control any potentially responsive WAVES records that had been transferred to the White House at the time of plaintiff's FOIA request, and thus defendant did not withhold (and need not retrieve) these records under FOIA.  Also, as defendant did not control the records, they are not agency records under FOIA, and the Court lacks power to order relief for this independent reason.

In short, plaintiff has received all of the documents to which it could be entitled under FOIA, and the Court should grant defendant's motion to dismiss for lack of subject matter jurisdiction.

2

## BACKGROUND

Plaintiff filed a lawsuit under FOIA seeking "White House visitor logs" of Jack Abramoff's visits to the Complex. See Complaint for Declaratory and Injunctive Relief, February 22, 2006, at ¶ 5. This request potentially implicated ACR and WAVES records, see Declaration of Special Agent Kathy J. Lyerly (Lyerly Decl.), May 16, 2006, at ¶ 6 (attached as Exhibit 6): ACR records include information such as the pass holder's name and badge number, the time and date that the badge was swiped across a badge reader, and the post at which the swipe was recorded, id. at ¶ 7; WAVES records consist of records generated when information is submitted to the Secret Service about workers and visitors whose business requires their presence at the White House Complex, id. at ¶ 8. In a stipulation and agreed order signed by the Court on April 25, defendant promised to "produce any and all documents responsive to plaintiff's . . . request without redactions or claims of exemption[ ] on or before May 10, 2006."[2] Stipulation and Agreed Order, April 25, 2006. Defendant did so, producing the only two records (both ACR records) that it found during a reasonable search. Lyerly Decl. at ¶¶ 14, 15, 17 (describing the documents that were found and stating that all responsive documents have been released).

Having fully complied with the stipulation and agreed order, defendant filed the motion to dismiss to which this reply relates.[3] Defendant's Motion to Dismiss for Lack of Subject

---

[2] Defendant does not concede, through its use of the word "responsive" or otherwise, that the records it has produced or searched are in fact "agency" records, as that term is used in the FOIA. Defendant's argument is that to the extent that ACR and WAVES records are assumed to be subject to FOIA, plaintiff has received all that it could hope to obtain from its suit. Of course, to the extent defendant demonstrates that the requested documents are not subject to FOIA, dismissal is also appropriate. See infra at pp. 12-15.

[3] Prior to defendant filing its motion to dismiss, plaintiff filed a motion to compel and for other sanctions. Plaintiff's Motion to Compel Defendant United States Secret Service to Comply

Matter Jurisdiction, May 16, 2006.  Defendant argued that, as all responsive documents found

after a reasonable search had been released to plaintiff, the case is moot because plaintiff has

"obtained everything that [it] could recover ... by a judgment of th[e] court in its favor."  Hall v.

CIA, 437 F.3d 94, 99 (D.C. Cir. 2006); Defendant's Memorandum in Support of Motion to

Dismiss for Lack of Subject Matter Jurisdiction (Opening Memorandum), May 16, 2006, at 4.

Plaintiff disagreed with the premise that it had received all responsive documents that were found

after a reasonable search and so opposed defendant's motion.  Plaintiff's Opposition to

Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Reply in Support of

Its Motion to Compel (Plaintiff's Opposition), June 7, 2006.

Shortly before it was to file this reply, defendant learned that there might be records

related to the subject matter of plaintiff's request that inadvertently had not been produced.

Second Declaration of Special Agent Kathy J. Lyerly (Second Lyerly Decl.), July 3, 2006, at ¶¶

3, 12 (attached as Exhibit 1).  In the course of searching for records that might be responsive to a

request in an unrelated matter, what appeared to be a WAVES record was discovered on the hard

drive of a computer in the Information Technology Section of defendant's Presidential Protective

Division.  Id. at 3. Upon further examination, it appeared that certain WAVES data pre-dating

October 2004 existed on the hard drive of that computer and of a second computer in that office.

Id.  Those computers are used for transferring WAVES records from defendant's server to CD-

---

with this Court's Order and for Sanctions (Plaintiff's Motion to Compel), May 16, 2006.
Defendant demonstrated in its opposition to this motion that, based on the facts known at the
time, plaintiff's arguments for compulsion and other sanctions were meritless.  Defendant's
Opposition to Plaintiff's Motion to Compel and for Other Sanctions (Defendant's Opposition to
Plaintiff's Motion to Compel), June 1, 2006.  Defendant will be filing an amendment to its
opposition contemporaneous with this filing which shows that the recent release of documents
does not undermine defendant's argument that plaintiff's arguments are meritless.

ROMs.  See id. at ¶ 10. Alerted to the discovery of these records, defendant moved for (and was

granted) an extension of time to file this reply, see Doc. No. 19, and decided to search the hard

drives of the two computers for WAVES records related to Jack Abramoff, see Second Lyerly

Decl. at ¶¶ 4-9.  Defendant did not initially search the two computers because the individuals in

charge of the office where the two computers were located did not know that the computers

contained pre-October 2004 WAVES data.  Id. at ¶ 12.

Defendant assembled a special team under the direction of its Office of Inspection to

determine what WAVES records were on the hard drives.  Id. at ¶¶ 4-5.  To accomplish its task,

the team manually searched through files and wrote and employed a special computer program

which searched the relevant hard drive files for any references to the name Jack Abramoff.  Id. at

¶¶ 5-8.  In the end, after scouring the computers, the Office of Inspection team found WAVES

data for Jack Abramoff relating to six separate appointment dates and ACR data matching the

data included in the ACR records that defendant previously released to plaintiff.[4]  Id. at ¶ 9.

(Importantly, the hard drives – even if considered together – do not contain a comprehensive set

of WAVES data.  Id. at ¶ 6.)  The team also found that the pre-October 2004 WAVES data on

the hard drives appear to exist in separate locations from the computer folders used to create CD-

ROMs and that many of defendant's employees who created the CD-ROMs and conducted FOIA

searches were unaware of the existence of these files.  Id. at ¶¶ 6, 12.  Defendant released the

_____

[4] To be clear, the WAVES data reflect appointment dates, but do not necessarily reflect
actual entries to and exits from the White House.  See Exhibits 2, 5; Second Lyerly Decl. at ¶ 9.
Also, the data relating to the six separate appointment dates and previously-released ACR
records were found repeated in multiple files, as reflected in the documents released to plaintiff.
See, e.g., Exhibit 2.

newly-discovered WAVES data and the ACR data to plaintiff just prior to filing this reply.[5]  See supra n.1.

## ARGUMENT

### A.    Defendant Has Satisfied Its Search Requirements, Having Done More Than FOIA Requires.

FOIA requires only that an agency produce all records found after a reasonable search. Defendant has gone above and beyond this call of duty:  It has produced all records found after two searches, the first of which was reasonable and the second of which far exceeded what is required by FOIA.  Plaintiff therefore can derive nothing from an order of this Court that it has not already received.  Plaintiff's inadequate-search argument, therefore, fails, and the case is moot.

It is well-established that where an agency releases records responsive to a request found after a reasonable search, "the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made."  Crooker v. U.S. State Dep't, 628 F.2d 9, 10 (D.C. Cir. 1980).  See also Drake v. FAA, 291 F.3d 59, 67 (D.C. Cir. 2002) (FOIA

_____

[5] Defendant has released four sets of documents, which are attached as Exhibits 2-5. Three of the document sets, Exhibits 3-5, were generated as a result of the search by the Office of Inspection team.  Second Lyerly Decl. at ¶ 13.  The fourth document set, Exhibit 2, was generated as a result of a search conducted by one of defendant's employees after defendant first learned of the records on the hard drives, as described above at p. 4, but prior to the search by the Office of Inspection team.  Id. at ¶ 13.  The different document sets reflect different methods of displaying the information stored on the hard drives, and some of the sets are more comprehensive than others.  For example, Exhibit 3 includes all of the WAVES data for the six appointments and the relevant ACR data, whereas Exhibit 2 does not encompass all of this information.  Id.  No other responsive documents were found in the course of defendant's search. Id. at ¶ 17.  And to be clear, however reproduced on paper, the hard drives contained WAVES data on six appointments and the previously-released ACR data.

claim mooted by virtue of FAA's release of all documents responsive to plaintiff's FOIA request).  To satisfy this standard, the agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents," Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984), which means "a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that an agency is not required to search every record system).  An agency, to establish the adequacy of its search, need only describe the "scope and method of the search" in "reasonable detail," Perry, 684 F.2d at 127, in non-conclusory declarations submitted in good faith, see Steinberg, 23 F.3d at 551.  Such declarations "need not be precise," but must show that a good faith effort was made "to conduct a search for the requested records," Schrecker, 217 F. Supp. 2d at 33, 34, and "aver[] that all files likely to contain responsive materials . . . were searched[.]" Wilbur, 273 F. Supp. 2d at 124.  "Agency [declarations] are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1202 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir.1981)).

Plaintiff's argument that defendant conducted an inadequate search finds no support in law or fact.  As defendant previously explained, defendant's first search was reasonably calculated to uncover all relevant documents.  Opening Memorandum at 6-7.  In particular, defendant used qualified personnel and appropriate search terms to search all databases that it believed might include relevant materials.  Lyerly Decl. ¶¶ 6, 9, 12, 13.  That search was more than reasonable.  See Goland v. CIA, 607 F.2d 339, 352 & n.78 (D.C. Cir. 1978).

That defendant found records after the initial release does not undermine the reasonableness of defendant's initial search. Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986) (holding that "a search [was] not unreasonable simply because it fail[ed] to produce all relevant material" as "[i]t would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file") (emphasis in parenthetical statement in original); Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (noting that even a "reasonable and thorough search" can miss documents). The reasonableness of a search is not determined by the results of the search. Iturralde, 315 F.3d at 315. Rather, "the adequacy of a FOIA search is generally determined . . . by the appropriateness of the method used to carry out the search." Id. Here, defendant used an appropriate method for its first search, as the later-discovered WAVES files on the computers exist in locations separate and apart from the folders used to create the CD-ROMs and many of the individuals who conducted FOIA searches, along with the individuals who headed the office where the computers were located, did not know about the existence of these files. Second Lyerly Decl. at ¶¶ 6, 12.

What is more, the second search that defendant conducted went far beyond that required by FOIA. When defendant learned that it might have, on two computers' hard drives, records related to plaintiff's request that it had not previously discovered, it conducted a painstakingly thorough search of those computers. See Second Lyerly Decl. at ¶¶ 5, 8, 9. It called in a special team to perform the search, and under the direction of that team, a computer program designed to roam the relevant hard drive files and find all references to the name Jack Abramoff was written and used. Id. at ¶¶ 4, 8. This extraordinary effort surpassed FOIA's reasonable search standard, meaning that plaintiff has received more than that to which FOIA entitles it. And importantly,

8

defendant's good faith in conducting this exhaustive follow-up search bolsters the integrity of its search.  See Meeropol, 790 F.2d at 953 (noting that "the additional releases suggest a stronger, rather than a weaker, basis for accepting the integrity of the search") (quotations omitted from parenthetical).

In short, the case is moot because plaintiff has obtained more than it could hope to obtain from a judgment of this Court.

**B.      Plaintiff Had No Evidence to Support Its Arguments That Defendant Has Intentionally Withheld Records in Its Possession.**

Plaintiff's next two arguments – that defendant must be withholding documents because (1) the ACR records released to plaintiff are incomplete and (2) defendant held WAVES records for more than 60 days eight or more years ago – urge that contrary to the sworn statements in Agent Lyerly's declarations, Lyerly Decl. at ¶ 18; Second Lyerly Decl. at ¶ 18, defendant is purposefully withholding documents that it found in the course of its searches.  Both arguments falter for the same reason, namely, they are based on nothing more than speculation about the existence of responsive records; plaintiff has no evidence showing that ACR records are by their nature complete or that defendant has withheld relevant WAVES records.  In fact, Agent Lyerly's declarations state that ACR records are not comprehensive, Lyerly Decl. at ¶ 16; Second Lyerly Decl. at ¶ 14, and that defendant has not withheld WAVES records relevant to the subject matter of plaintiff's request, Lyerly Decl. at ¶ 18; Second Lyerly Decl. at ¶ 18.  Speculation does not suffice to establish that responsive records exist, Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981), or that dismissal is inappropriate.

9

1.  Plaintiff first argues that defendant must be withholding responsive records given that the ACR records released by defendant are incomplete.  Plaintiff's Opposition at 3.  The ACR records are incomplete, plaintiff contends, in that they do not reflect certain visits made by Mr. Abramoff to the Complex, such as for Hanukkah receptions in 2001 and 2002, that have been publicly acknowledged by the White House.  Id.  And plaintiff brushes off the explanation for the absence of records that defendant offered in response to plaintiff's motion to compel, namely, that ACR records are not all encompassing because, among other reasons, individuals who visit the Complex in a group for an official function or reception do not always have to swipe their passes across the pass readers.  Plaintiff's Opposition at 3-4, Defendant's Opposition to Plaintiff's Motion to Compel at 9-10; Lyerly Decl. at ¶ 16.  Plaintiff asserts that defendant's explanation that "access to the White House complex is possible without going through a security check, as long as the visitors come in groups[,]" is "preposterous."  Plaintiff's Opposition at 4.

Rhetorical flourish aside, plaintiff has no evidence to rebut Agent Lyerly's statements that ACR records are not comprehensive.  Agent Lyerly expressly states that "[t]here are a variety of reasons why ACR records are not comprehensive as to entries and exits," including that guests who arrive in prearranged groups for official functions need not always swipe their passes across the pass readers.  Lyerly Decl. at ¶ 16.  Plaintiff has put forth absolutely no evidence to contradict this sworn declaration testimony, and it cannot rebut a declaration with "purely speculative claims about the existence and discoverability of other documents," Ground Saucer Watch, Inc., 692 F.2d at 771.  Labeling defendant's explanation "preposterous" obviously does not constitute evidence undermining it.  In any event, defendant's explanation is not preposterous.  Defendant

did not state that visitors can access the Complex without going through a security check, but rather that individuals sometimes can enter without going through a turnstile, which is what creates an ACR record. Lyerly Decl. at ¶ 16. Needless to say, turnstiles are not the only "security check[s]" at the Complex. Second Lyerly Decl. at ¶ 14. What is more, ACR records themselves (separate and apart from the turnstile mechanisms that create them) serve little to no security function, so that they are not created in certain instances does not meaningfully diminish Complex security. Id. at ¶ 16.

2. Plaintiff also argues that defendant must be withholding WAVES records because eight years ago defendant turned over WAVES records in response to a subpoena in Alexander v. FBI, 96-cv-2123. Plaintiff supports this contention by highlighting the document production in the Alexander case, which took place in 1998, but involved records from two years before that, see Exhibit 4 to Plaintiff's Motion to Compel. Plaintiff argues that this production shows that as recently as *eight years ago* defendant had a practice of keeping records for more than 30 to 60 days. Plaintiff's Opposition at 4. In light of the Alexander production, plaintiff suggests that defendant must be withholding WAVES records. Plaintiff's Opposition at 4.

This argument too founders on a lack of evidence. Agent Lyerly explains in her second declaration that defendant does not have a full complement of WAVES data. Second Lyerly Decl. at ¶ 6. Plaintiff offers no evidence to rebut this explanation. That defendant may have retained a full complement of WAVES records for more than 30 to 60 days eight or more years ago does not establish that defendant retained all of the WAVES data related to Mr. Abramoff's visits; one does not ineluctably follow from the other. Stripped of its veneer, then, plaintiff's argument consists of nothing more than speculation that defendant is withholding WAVES

11

records.  Speculation does not suffice to rebut Agent Lyerly's second declaration, see Ground

Saucer Watch, 692 F.2d at 771, or by extension, to ward off dismissal, see Hall, 437 F.3d at 99.

### C.    Defendant Has No Obligation to Retrieve Additional Records.

Plaintiff's final argument is that dismissal is inappropriate because the WAVES records

transferred to and held by the White House are responsive agency records that defendant must

retrieve.  Again, this argument is without merit, for two reasons.  First, defendant did not control

or possess the WAVES records sought by plaintiff at the time of plaintiff's FOIA request, see

Second Lyerly Decl. at ¶ 16; infra pp. 13-14 , and it is well-established, then, that defendant need

not retrieve them to respond to plaintiff's request.[6]  Kissinger v. Reporters Committee for

Freedom of the Press, 445 U.S. 136, 150-151 (1980).  Second, and relatedly, the WAVES

records are not agency records subject to FOIA because defendant did not control them at the

time of the request. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 145 (1989); Burka

v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 515 (D.C. Cir. 1996).  Therefore, the

Court has no power to grant relief under the FOIA.  Kissinger, 445 U.S. at 150.

The Supreme Court held in Kissinger that a defendant need not retrieve documents that it

did not possess or control at the time of the FOIA request.  445 U.S. 150-151.  A court can order

relief in a FOIA case only if an agency has (1) "improperly"; (2) "withheld"; (3) "agency

records."  5 U.S.C. § 552 (a)(4)(B); Kissinger, 445 U.S. at 150.  (Jurisdiction is lacking unless

the agency has contravened all three elements of the statute.  Kissinger, 445 U.S. at 150.)  The

Kissinger Court concluded that a defendant has not withheld a document under FOIA unless it

---

[6] Defendant assumes that this argument refers to records containing WAVES data which
have not been released to plaintiff.

had possession or control of the document *at the time of the FOIA request*: "[T]he [agency]
cannot be said to have had possession or control of the documents at the time the requests were
received. It did not, therefore, withhold any agency records, an indispensable prerequisite to
liability in a suit under FOIA." Id. at 155. And the Court added, if the agency did not withhold a
document, then FOIA does not allow a court to order the agency to retrieve it. See id. at 152 ("If
the agency is not required to create or retain records under FOIA, it is somewhat difficult to
determine why the agency is nevertheless required to retrieve documents that have escaped its
possession, but which it has not endeavored to recover.")

Control is not only an important part of the "withholding" component of FOIA's
jurisdictional provision, but it is also a constituent element of the "agency records" component.
Tax Analysts, 492 U.S. at 145 (explaining that an agency must control a document at the time of
the FOIA request for the document to be an agency record). The test for control with respect to
both elements is the same when, as here, the agency did not possess the records at the time of the
request. See Tax Analysts, 492 U.S. at 148 n.9 (noting that the control inquiry with respect to
withholding "replicates" the control inquiry for agency records); United We Stand v. IRS, 359
F.3d 595, 602 (D.C. Cir. 2004) (limiting, to different circumstances than those present here, a
modification of the control test for agency records). To determine whether an agency had control
over the records at the time of the request in this circumstance, a court looks to:

> (1) the intent of the document's creator to retain or relinquish
> control over the records; (2) the ability of the agency to use and
> dispose of the records as it sees fit; (3) the extent to which agency
> personnel have read or relied upon the document; and, (4) the
> degree to which the document was integrated into the agency's
> record systems or files.

13

Burka, 87 F.3d at 515.

Defendant need not retrieve any WAVES records held by the White House at the time of plaintiff's FOIA request because defendant lacked possession or control over the records and so, pursuant to Kissinger, did not withhold them. 445 U.S. at 155. Defendant did not possess, at the time of plaintiff's FOIA request, the WAVES documents that were transferred to the White House, as they had already been sent there.[7] See Lyerly Decl. at ¶ 10. Nor did defendant have control of the WAVES records that had been transferred to the White House: Neither defendant nor the White House intended for defendant to retain control over them; at the time of the requests, defendant did not direct the use or disposition of the documents; but for a brief period prior to and during any visits listed in the WAVES records, defendant did not rely on these documents to fulfill its protective mission; and the records were not well-integrated into defendant's files, as defendant saved them for only 30 to 60 days before transferring copies to the White House and erasing its own copies from the server.[8] See Second Lyerly Decl. at ¶ 15-16; Lyerly Decl. at ¶ 11; Burka, 87 F.3d at 515. Thus, in light of all of the relevant circumstances, defendant did not have control over the WAVES records at the time of plaintiff's FOIA request and so was not withholding them.

Defendant did not withhold the WAVES records possessed by the White House, plaintiff's argument fails, and the Court need not reach the issue of whether these WAVES

---

[7] Defendant transferred these records to the White House, well before plaintiff's request, see Lyerly Decl. at ¶ 10, because the White House is the party with a continuing interest in these documents, and not for any reasons that plaintiff might imply, see Second Lyerly Decl. at ¶ 16.

[8] The documents containing WAVES data that were recently discovered on defendant's hard drives are irrelevant to this argument because they have been released to plaintiff.

records are agency records.  See Kissinger, 445 U.S. at 150 (explaining that jurisdiction is

lacking unless the agency has contravened all three elements of FOIA).  But if the Court does

reach this issue, it should hold that the WAVES records are not agency records and, therefore,

reject plaintiff's argument.  As established in the preceding paragraph, defendant did not control

the records at the time of the request.  Thus, the WAVES records are not agency records, Tax

Analysts, 492 U.S. at 145 (holding that a document is not an agency record unless it was

controlled by the agency), and the Court lacks the power to order relief, including retrieval

(because all three elements of the statute have not been transgressed), Kissinger, 445 U.S. at 150.

     None of the cases cited by plaintiff supports the conclusion that the WAVES records held

by the White House are responsive agency records that defendant must retrieve.  McGehee v.

CIA dealt with the question of whether a document originating in one agency but possessed by

another can be an agency record of the non-originating agency.  697 F.2d 1095, 1108 (D.C. Cir.

1983).  The court concluded that a document can be an agency record of the non-originating

agency.  Id. at 1108-1109.  This holding is inapplicable to this case because, even if defendant

created the records, plaintiff has not sued the White House Office of Records Management – the

entity at the White House to which the records are sent – for the records and, in any case, it is not

an agency subject to FOIA.  See Second Lyerly Decl at ¶ 16; Kissinger, 445 U.S. at 156;  In re

Executive Office of the President, 215 F.3d 20, 21 (D.C. Cir. 2000) (noting that "courts

consistently have interpreted FOIA to exclude the White House Office").  The other cases cited

by plaintiff, Forsham v. Harris, 445 U.S. 169, 182 (1980), Bureau of Nat'l Affairs v. Dep't of

Justice, 742 F.2d 1484, 1490-91 (D.C. Cir. 1984), and Ryan v. Dep't of Justice, 617 F.2d 781,

785 (D.C. Cir. 1980), similarly fail to advance its cause.  Plaintiff cites these cases for their

discussions of the standards for determining whether documents are agency records, Plaintiff's

Opposition at 7-8, but the discussions in these cases are fully consistent with defendant's

treatment of the agency records issue.[9] <u>See</u> <u>supra</u> pp. 10-11.

    The short of the matter, then, is this:  Any WAVES records held by the White House are

not relevant to determining whether plaintiff has received all potentially responsive records found

after a reasonable search, and Agent Lyerly's first and second declarations establish that plaintiff

has received all such records.

**CONCLUSION**

    For the reasons stated above and included in defendant's opening memorandum in

support of its motion to dismiss, plaintiff's case should be dismissed for lack of subject matter

jurisdiction.

Dated:  July 7, 2006                                 Respectfully submitted,

                                                     PETER D. KEISLER
                                                     Assistant Attorney General

                                                     KENNETH L. WAINSTEIN
                                                     United States Attorney

                                                     CARL J. NICHOLS
                                                     Deputy Assistant Attorney General

---

    [9] Plaintiff misapplies these cases:  It overemphasizes the importance of WAVES records to defendant's protective mission (as explained earlier, <u>supra</u> pp 10-11, WAVES records play a limited role in defendant's protection duties, <u>see</u> Second Lyerly Decl. ¶¶ 15-16) and ignores elements one, two, and four of <u>Burka</u>'s governing test for control.  Plaintiff's Opposition at 7-8; <u>Burka</u>, 87 F.3d at 515.

16

JOSEPH H. HUNT
Branch Director

OF COUNSEL:                         s/ Justin M. Sandberg
                                    ELIZABETH J. SHAPIRO
MOLLY WEBER                         (D.C. Bar No. 418925)
United States Secret Service        Assistant Branch Director
                                    JUSTIN M. SANDBERG
                                    (Ill. Bar. No. 6278377)
                                    Trial Attorney
                                    United States Department of Justice
                                    Civil Division, Federal Programs Branch
                                    20 Massachusetts Avenue, N.W. #7224
                                    P.O. Box 883 Ben Franklin Station
                                    Washington, D.C. 20044
                                    Telephone:  (202) 514-3489
                                    Facsimile:  (202) 616-8202
                                    E-mail:  justin.sandberg@usdoj.gov

                                    Attorneys for Defendant

17