# EXHIBIT 2

Case 1:06-cv-00310-RCL    Document 36-3    Filed 11/30/2007    Page 1 of 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES SECRET SERVICE, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.<br>06-310 (RMC) |

**DECLARATION OF CRAIG W. ULMER**
**SPECIAL AGENT IN CHARGE**
**FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER**
**UNITED STATES SECRET SERVICE**

I, Craig W. Ulmer, hereby declare as follows:

1. I am the Special Agent in Charge, Freedom of Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service (hereinafter "Secret Service"), which is a component of the Department of Homeland Security ("DHS"). I have been the Secret Service FOI/PA Officer since August 5, 2007. I have been employed with the Secret Service as a Special Agent (GS-1811) since April 28, 1985.

2. DHS regulations, Title 6, Code of Federal Regulations, section 5.4, and Appendix A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as to whether to grant Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests for Secret Service records (68 FR 4056, 4058, and 4069).

3. The statements made in this declaration are based on information made available to me in my official capacity.

4. As the Secret Service's FOI/PA Officer, I am familiar with plaintiff's FOIA request

to the Secret Service.

5. Pursuant to search requests from myself (or my office), the Secret Service has conducted additional searches in certain record groups for documents/records responsive to plaintiff's FOIA request: records originating from the Executive Office of the President reflecting parking requests, or authorization for parking, with respect to the White House Complex; White House Daily Briefing Sheets; Worker and Visitor Entrance System ("WAVES") and Access Control Records System ("ACR") records on the June and July 2006 CD-ROMs; and, electronically maintained e-mails at the WAVES Center requesting access to the White House Complex. Those searches, which I have been advised were conducted only after they were authorized by the Office of the Vice President and/or the Office of the President, have now been completed, and no records responsive to plaintiff's FOIA request were located.

6. With respect to an additional record group, defined below as "Sensitive Security Records," the Secret Service cannot confirm or deny whether any responsive records exist. To do so would reveal whether the individual named in plaintiff's FOIA request had been subject to certain additional security check(s). Such information, if combined with other information, could reveal when certain additional background checks are, or are not, conducted by the Secret Service. Revealing such information would, therefore, present a security risk.

7. To the extent that any responsive records exist, the information contained in the records is exempt pursuant to FOIA exemptions codified at 5 U.S.C. §§ 552(b)(2), (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F). A description and explanation of the application of these exemptions to Sensitive Security Records is set forth below.

**Plaintiff's FOIA Request**

8.   By letter dated January 20, 2006, and received by the Secret Service FOI/PA Office on January 23, 2006, plaintiff submitted to the Secret Service a FOIA request for:

> any and all agency records concerning, relating to, or reflecting the following subjects: All White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House.

**Previous Releases**

9.   I have been advised that in connection with prior searches, WAVES data and ACR data/records regarding the individual named in plaintiff's FOIA request were released to the plaintiff in this case.

**Sensitive Security Records**

10.   In connection with its statutory responsibilities as set forth in Title 18 of the United States Code, sections 3056 and 3056A, the Secret Service sometimes creates records that relate to the background investigation and security process conducted in connection with certain individuals entering or scheduled to enter the White House Complex (hereinafter referred to as "Sensitive Security Records"). These records are created in the course of conducting additional background checks and other security-related activities regarding certain visitors, who are chosen by the Secret Service based on certain details in their backgrounds and/or the circumstances of their visits. The persons whose visits to the White House are reflected in the Sensitive Security Records should also be reflected in WAVES records.

11.   In the course of litigating another case with a similar FOIA request, the Office of Protective Operations ("OPO") discovered that an electronic table was being populated that contains certain Sensitive Security Records that date back to March 2003. OPO also has paper

3

records that constitute Sensitive Security Records; however, those paper records only date back to October 2006. The Office of the Assistant Director, Office of Protective Research ("OPR"), Intelligence Division, also has paper records that constitute Sensitive Security Records, but those too only date back to October 2006, with some sporadic records dating back to September 2006.

12. Because revealing whether responsive records exist in this case would allow individuals to piece together the circumstances under which the additional checks are done, the Secret Service cannot confirm or deny the existence of responsive records.

**FOIA Exemptions Claimed**

13. Even if potentially responsive Sensitive Security records were located, however, this information would be subject to FOIA exemptions.

14. Information in the Sensitive Security Records could include the following: the name of an internal Secret Service security program; the name of the individual who made the request for the appointment; appointment date and time; the time and date a report was run; a number letter sequence associated with an Access Control Officer who requested the report; the date and time of the request for the appointment; an appointment letter and number sequence assigned to an appointment for access to the White House Complex by a computer system; information concerning who the appointment is with; the name, Social Security number, date of birth, city and state of residence for the individual seeking access to the White House Complex for whom the security check is being requested; and information confirming certain background checks to be conducted.

15. Any and all potentially responsive information in the Sensitive Security Records would have been compiled for law enforcement purposes. All of the information would have

been gathered and utilized by the Secret Service in connection with its statutory responsibilities for protection and security, as set forth in Title 18 of the United States Code, sections 3056 and 3056A. Therefore, all of the potentially responsive information would meet the threshold requirement for exemption from release under the provisions of the FOIA, section 552(b)(7).

16. Any potentially responsive information in the Sensitive Security Records would be withheld from release in its entirety under the FOIA, sections 552(b)(2), (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F). A detailed discussion of the basis for invoking these exemptions set forth in the following paragraphs.

**FOIA Exemptions (b)(2) and (b)(7)(E)**

17. To the extent that potentially responsive information could be located in a search of the Sensitive Security Records in connection with plaintiff's FOIA request, this information would be withheld under Title 5 of the United States Code, section 552(b)(2), and in some cases under 552(b)(2) in conjunction with section 552(b)(7)(E). Section 552(b)(2) exempts from disclosure information "relating solely to the internal personnel rules and practices of an agency." Section 552(b)(7)(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . .would disclose techniques and procedures for law enforcement investigations or prosecutions; or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

18. Such potentially responsive information that would be withheld under exemption (b)(2) includes the appointment letter/number sequence assigned to an appointment by the computer; and a letter/number sequence associated with an Access Control Officer. These pieces

of information relate strictly to the internal operation of the system and provide no information to the public. Therefore, this information would be withheld under a low (b)(2) exemption.

19.     Any and all potentially responsive information in Sensitive Security Records would have been compiled for law enforcement purposes, and in connection with the Secret Service's protective responsibilities as set forth under Title 18 of the United States Code, sections 3056 and 3056A. To release the information could disclose information related to when and if various security checks and security measures are taken in connection with individuals seeking entrance into the White House Complex. For instance, the abbreviated name of the program as shown on a potentially responsive document itself could reveal security-related information concerning when certain checks are, or are not, conducted. Further, to reveal the name of and personal identifying information concerning the individual, and who he was visiting, could suggest when additional security checks are conducted and when certain security measures are not, or are unlikely, to be taken. Thus, the name, personal identifying information, and intended visitee information must also be withheld as such details may indicate certain security related activity, or the lack thereof. Further, in this case, as the plaintiff's FOIA request seeks information concerning only one individual, if the Secret Service were to search for any such record and then release the fact of whether this search had or had not located any such responsive records, that release of information in and of itself, could, when repeatedly combined with other information, reveal when such security checks are or are not conducted. Release of the information would reveal information not known to the general public. Further, the release of the information would reveal techniques and criteria used by the Secret Service to gather additional information in certain circumstances and in regard to certain individuals. Disclosing any potentially responsive

information (including whether a search for a particular individual's name located, or did not locate a record), could, when repeatedly combined with other similar information, reasonably be expected to enable individuals to circumvent the law by revealing information regarding the circumstances that trigger when certain security steps are taken, and the manner through which those additional security checks are taken or information is gathered. For this reason, any and all such potentially responsive information located in connection with plaintiff's FOIA request would be withheld under a high (b)(2) exemption in conjunction with exemption (b)(7)(E).

**FOIA Exemption (b)(7)(F)**

20. Title 5, United States Code, section 552(b)(7)(F), exempts from disclosure "records or information compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual." As discussed above, release of any potentially responsive Sensitive Security Records could disclose information related to when and if various security checks and security measures are taken in connection with individuals seeking entrance into the White House Complex. One purpose of those security checks and security measures is to protect the life and physical safety of one or more protectees of the Secret Service. Disclosing the Secret Service's techniques and procedures in that regard could permit an individual or organization to attempt to avoid certain security checks, potentially impeding the Secret Service's efforts to identify persons who may be a threat to its protectees, and thus potentially endangering the life and physical safety of one or more Secret Service protectees.

**FOIA Exemptions (b)(6) and (b)(7)(C)**

21. Title 5, United States Code, section 552(b)(6), exempts from disclosure

information about individuals in "personnel and medical files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Title 5, United States Code, section 552(b)(7)(C), exempts from disclosure "records or information compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

22. Exemptions (b)(6) and (b)(7)(C) would be cited to justify redacting, from Sensitive Security Records, the name of the individual making the request for access and the Social Security number and date of birth for the individual seeking access to the White House Complex.

23. In making its determination that it would withhold this information under exemptions (b)(6) and (b)(7)(C), the Secret Service would balance the public's interest in disclosure against the rights to personal privacy of the individual named, and determine that the privacy rights of the individual outweigh any public interest in disclosure.

24. First, in regard to the name of the individual making the access request, there would appear to be little public interest in such information. Yet, the release of such information could invade the individual's privacy by causing him/her public attention or subjecting the individual to unnecessary and unwanted contact. Therefore, any such information would be withheld under exemptions (b)(6) and (b)(7)(C).

25. Second, though the individual about whom plaintiff seeks information has received substantial notoriety, the Secret Service would withhold his Social Security number and date of birth under exemptions (b)(6) and (b)(7)(C). Such information, combined with the individual's name, could lead to various forms of criminal activity against the named individual, such as identity theft or fraud. Even in the case of an individual who has received the notoriety

surrounding the individual named by the plaintiff's FOIA, there seems to be no reason why the combination of that person's Social Security number and date of birth should flow into the public domain, or why the public would have a valid interest in such identifying information. Considering these factors, the date of birth and Social Security number of this individual would be withheld under exemptions (b)(6) and (b)(7)(C).

### Segrebility of Information

26. Based on the information that would be withheld in a potentially responsive Sensitive Security Record, it would not be possible to segregate any responsive information, because the remaining information on a document would be meaningless. Once information such as the name of a program; the name, Social Security number, date of birth, and other identifying information concerning the individual subject to the security process; and information that indicates when and by whom the process is triggered is removed, the remaining information would be a blank form. Therefore, there would be no information that could be reasonably segregated and released to plaintiff. Also, of course, releasing any information would reveal the existence of a responsive record, thereby creating a security risk.

### Conclusion

27. In completing its protective and investigative functions, the Secret Service must protect from disclosure identifying information regarding third parties, and must protect the integrity of its security and protection related processes and information. For these reasons, the Secret Service cannot confirm or deny the existence of potentially responsive information in connection with plaintiff's FOIA request with respect to the Sensitive Security Records; but asserts that if such responsive information existed, it would be withheld in full.

I declare under penalty of perjury that the foregoing is true and correct.

NOVEMBER 30, 2007
Date

*Craig W. Ulmer* (signature)
Craig W. Ulmer
SAIC, FOIA/PA Officer