<b>IN THE UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT OF COLUMBIA</b>

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06-CV-00310 (RMC) |
| ) | |
| UNITED STATES SECRET SERVICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

<b>PLAINTIFF'S OPPOSITION TO DEFENDANT'S "SUPPLEMENTAL"<br>
MOTION FOR SUMMARY JUDGMENT</b>

Plaintiff Judicial Watch, Inc., by counsel, respectfully submits this opposition to Defendant's "Supplemental" Motion for Summary Judgment.[1] As grounds therefor, Plaintiff states as follows:

<b>MEMORANDUM OF LAW</b>

**I.      Background and Introduction.**

On January 20, 2006, Plaintiff served a FOIA request on Defendant seeking the following agency records: "All White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House." When Defendant failed to produced the responsive records within the time period required by law, Plaintiff filed suit. Plaintiff then moved for partial summary judgment.

---

[1] Until the recent filing of its "supplemental" motion, Defendant never indicated that it intend to move for summary judgment. Rather, it represented to Plaintiff and the Court that it intend to "supplement its filings (if necessary)." *See* Response to Order to Show Cause at 2; *see also* Joint Status Report at 2. In filing its "supplemental" motion, Defendant neglected to file a separate statement of material facts, as is required by Local Civil Rule 7(h). It was only when Plaintiff questioned Defendant's "supplemental" motion that Defendant filed a motion for leave to file a separate statement.

In order to resolve Plaintiff's motion for partial summary judgment, the parties executed a joint stipulation and agreed order on April 19, 2006 that stated, in pertinent part:

> Defendant **shall produce** any and all documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act request, **without redactions or claims of exemption**, on or before May 10, 2006.

A copy of the Joint Stipulation and Agreed Order, Docket Entry No. 8, is attached as Exhibit A (emphasis added). Plaintiff agreed to withdraw its pending motion for summary judgment in exchange for Defendant's agreement to entry of a court order requiring it to produce all responsive records by a date certain, without redactions or claims of exemption. *Id.* The Court approved the parties' stipulation and entered the agreed order on April 25, 2006. *Id.*

Clearly, the parties' stipulation and agreed order was more than a mere "pledge" to produce documents, as Defendant now contends. *See* Memorandum in Support of Supplemental Motion for Summary Judgment ("Supplemental Memorandum"), Docket Entry No. 36, at 1. It was both an agreement between the parties and an enforceable court order that required, in clear and unambiguous terms, specific action by Defendant. It also was, and is, punishable by contempt.

On May 10, 2006, Defendant produced two records showing visits by Abramoff to the White House on March 6, 2001 and January 20, 2004. *See* Declaration of Deronda K. Grothe, attached as Exhibit B. Because the White House had publicly acknowledged several other Abramoff visits, and because Plaintiff was familiar with White House visitor records generally from having requested and received such records on other occasions, it was obvious that Defendant's May 10, 2006 production was incomplete. On May 16, 2006, Plaintiff filed a motion to compel Defendant to comply with the April 19, 2006 order. *See* Plaintiff's Motion to

2

Compel Defendant United States Secret Service to Comply With the Court's Order and for Sanctions, Docket Entry No. 12. That same day, Defendant moved to dismiss Plaintiff's lawsuit, representing to Plaintiff and the Court that its production was complete and arguing that this action was moot as a result: "Because the Secret Service has now released all responsive records, the case is moot, the court lacks further jurisdiction over it, and it should, accordingly, be dismissed." *See* Defendant's Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, Docket Entry No. 14, at 1.

Despite its representation to Plaintiff and the Court that all responsive records had been produced, on July 7, 2006, Defendant filed a reply memorandum in purported support of its motion to dismiss this action as moot in which it acknowledged the existence of yet more records responsive to Plaintiff's request. *See* Defendant's Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Defendant's Reply"), Docket Entry No. 22. Specifically, attached to Defendant's reply were previously unproduced records regarding visits by Abramoff to the White House on March 1, 2001; April 20, 2001; May 9, 2001; May 17, 2001; and December 10, 2001, as well as previously unproduced records regarding the visits by Abramoff to the White House on March 6, 2001 and January 20, 2004. *See* Defendant's Reply at Exhibits 2-5; Declaration of Deronda K. Grothe, attached as Exhibit B. Nonetheless, Defendant again represented to Plaintiff and the Court, "This case is moot. Plaintiff has obtained all that it could hope to obtain from a judgment of this Court: the production to it of all relevant documents found after a reasonable search." *See* Defendant's Reply at 1.

Despite a court order requiring it to produce all responsive records by May 10, 2006, a clear and unambiguous representation to Plaintiff and the Court that all such records had been

3

produced on that date, a subsequent production on July 7, 2007, and a second clear and unambiguous representation to Plaintiff and the Court that all relevant documents had been produced on July 7, 2007, Defendant now acknowledges having identified yet more records "potentially responsive" to Plaintiff's request. Citing security concerns, however, Defendant asserts that it cannot confirm or deny whether such records exist. Defendant also asserts that, even if such records were responsive to Plaintiff's request, they would be exempt from production. Defendant fails to state whether the records at issue concern yet more visits by Abramoff to the White House, or if the newly discovered records only concern visits already disclosed in the previously produced records.

## II.    Argument.

### A.    Defendant Has Neither Requested Relief From the Court's April 19, 2006 Order, Nor Demonstrated Why The Court Should Not Give Full Effect to the Order.

The resolution of Defendant's "supplemental" motion is straightforward. On April 25, 2006, Defendant was ordered to produce any and all records responsive to Plaintiff's FOIA request without redactions or claims of exemption. The parties' stipulation to this effect was no mere pledge to produce records. It was a court order. It also was an agreement freely entered into by Defendant, which presumably was fully aware of its security procedures with respect to White House visitors at that time. In agreeing to be bound by a court order that required it to produce all responsive records without redactions or claims of exemption, Defendant also had a full and fair opportunity to consider the matter and obtain the advice of its counsel. Despite having had every opportunity in April 2006 to raise any and all concerns it might have had about disclosing its security procedures when it responded to Plaintiff's FOIA request, Defendant

agreed to produce all responsive records without redactions or claims of exemption, and it agreed to be bound by a court order to this effect.

In short, Defendant has not provided any reason why the parties' Joint Stipulation and Agreed Order should not be given its full force and effect. Defendant does not assert that it was unaware of its security procedures for White House visitors at the time it entered into the stipulation and agreed order. It does not explain why it is more concerned about the potential disclosure of such procedures now than it was in April 2006, when it agreed to entry of a court order requiring it to produce all responsive records without redactions or claims of exemption. It does not explain what has occurred in the interim that warrants relief from the Court's April 25, 2006 order. It does not move for reconsideration of that order.

Moreover, Plaintiff relied to its detriment on Defendant's agreement to be bound by a court order requiring it to produce all responsive records without redactions or claims of exemption. Specifically, Plaintiff withdrew its then pending summary judgment motion. *See* Exhibit A at para. 1. Plaintiff is entitled to hold Defendant to the parties' stipulation and agreed order. Defendant's attempt to invoke claims of exemption with respect to the records at issue should be rejected, and Defendant should be compelled to produce any additional, responsive documents without further delay. Plaintiff also should be awarded attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

**B.     A "*Glomar*" Response to Plaintiff's Request is Inappropriate Here.**

Ordinarily, when an agency seeks to withhold records responsive to a FOIA request, "it must provide a relatively detailed justification, specifically identifying the reasons why a

5

particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). A "*Glomar*" response to a FOIA request is appropriate only in a very limited context. Such a response is appropriate only where an agency can demonstrate that the *fact* of the existence or nonexistence of agency records responsive to a FOIA request falls within a recognized FOIA exemption. *Wolf v. Central Intelligence Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007). A "*Glomar*" response "narrows the FOIA issue to the existence of records *vel non*." *Id.* at 374 n. 4. Whether the *contents* of any records may be subject to a claim of exemption is a very different inquiry. *Id.* at 380.

Again, Plaintiff's request seeks records of visits by Jack Abramoff to the White House. There is no dispute that Jack Abramoff visited the White House on a number of occasions. Defendant does not assert that the fact of any particular visit by Abramoff to the White House is exempt from FOIA. It simply cannot be said that the *fact* of the existence or nonexistence of responsive agency records falls within any recognized FOIA exemption. Whether the content of certain records of Abramoff's visits are subject to a claim of exemption is a separate inquiry. Defendant's argument misapplies a "*Glomar*" response.

Indeed, Defendant has readily acknowledged the existence of records of Abramoff's visits to the White House and has produced at least some records regarding these visits. When information has been officially acknowledged, its disclosure may be compelled even over an agency's objection. *Wolf*, 473 F.3d at 378 (*quoting*, *Fitzgibbon v. Central Intelligence Agency*, 911 F.2d 755, 765 (D.C. Cir. 1990)). An "official acknowledgment" must meet three criteria:

>First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, . . . the information requested must already have been made public through an official and documented disclosure.

* * *

>In the *Glomar* context, if the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue -- the existence of the records -- and the specific request for that information.

*Id.* (emphasis original). Defendant's prior disclosure of records responsive to Plaintiff's request unquestionably established the fact that such records exist. Defendant cannot legitimately claim that its prior disclosures were not "official and documented disclosures." They were made pursuant to court order and have been asserted and relied on repeatedly by Defendant, including in Defendant's argument that this lawsuit is moot by the very reason of its disclosure of responsive records of Abramoff's visits to the White House. Thus, all three criteria for demonstrating an "official acknowledgment" of the existence of records of Abramoff's visits to the White House are satisfied here.

In this regard, this case is not unlike *Wolf*, in which a FOIA requestor sought records from the Central Intelligence Agency ("CIA") regarding the assassination of a Columbian politician. The CIA made a "*Glomar*" response to the request, and the requestor demonstrated that the CIA had disclosed the existence of agency records regarding the assassinated Columbian leader when the Director of the CIA testified before Congress about the matter. The Court found that the CIA was not entitled to assert a "*Glomar*" response because the agency had officially acknowledged the fact that "CIA records 'about [the assassinated politician]' exist." *Wolf*, 473 F.3d at 379. The Court remanded the matter to the district court to determine whether the *contents* -- as

7

distinguished from the *existence* -- of the records were exempt from disclosure under one or more FOIA exemptions. *Id.* Here, Defendant officially acknowledged the fact of the existence of records regarding Jack Abramoff's visits to the White House when it produced at least some of these records pursuant to the Court's order. It cannot now assert that the very existence of such records is exempt from FOIA.[2]

A "*Glomar*" response simply is not the proper procedural device for Defendant to achieve what it is trying to achieve here, which is to prevent the disclosure of particular agency records. Should the Court not hold Defendant to the April 2006 joint stipulation and agreed order, the proper manner to address any claims of exemption regarding the *contents* of additional, responsive records is by the preparation of an ordinary *Vaughn* index, something which Defendant has yet to do. *King*, 830 F.2d at 219.

### C. Defendant Has Failed to Demonstrate that The Records At Issue are Categorically Exempt from Production.

Defendant does not appear to differentiate between its "*Glomar*" response and its argument that the records at issue are "categorically" exempt from production. The two types of responses are distinct, however, and each has its own limitations. As demonstrated above, a "*Glomar*" response is warranted only where the fact of the *existence* of records -- as distinct from the *content* of a particular record -- falls within a FOIA exemption. *Wolf*, 473 F.3d at 374. A "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate" to satisfy an agency's burden of proving why

---

[2] Defendant has not stated whether the newly discovered records concern the same visits as the records already disclosed or if they concern additional visits. There is no reason why this should matter, however, as the fact of the existence of records of Abramoff's visits has been acknowledged freely by Defendant.

responsive information should be withheld from a requestor. *King*, 830 F.2d at 224. "Only when the range of circumstances included in the category characteristically supports an inference that the statutory requirements for exemption are satisfied is such a rule appropriate." *The Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995) (internal quotation omitted).

      Defendant fails to demonstrate why a categorical approach, as opposed to the submission of an ordinary *Vaughn* index, is appropriate here. It first cites Exemption 2, which protects from disclosure records that "relate *solely* to the internal personnel rules and practices of an agency." 5 U.S.C. § (b)(2) (emphasis added). To satisfy this exemption, "the material withheld should fall within the terms of the statutory language" and, if so, "the agency may defeat disclosure by proving that either disclosure may risk circumvention of agency regulation," or "the material relates to trivial administrative matters of no genuine public interest." *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (internal quotations omitted). Defendant has not described a category of records that "characteristically support" an inference that the records described "relate *solely* to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2) (emphasis added). To the extent Defendant even acknowledges the existence of additional, responsive records, it is clear that, first and foremost, these records relate to visits to the White House. *See* Declaration of Craig W. Ulmer Special Agent in Charge Freedom of Information and Privacy Acts Officer, United States Secret Service, at para. 10 ("The Secret Service sometimes creates records that relate to the background investigation and security process conducted *in connection with certain individuals entering or scheduled to enter the White House Complex.*") (emphasis added.) To the extent such records relate to personnel rules

9

or practices of Defendant, such a relationship is merely secondary, or incidental, to a White House visit. *Id.* Exemption 2 does not apply, categorically or otherwise, because the records at issue do not relate *solely* to internal personnel rules or practices of Defendant.

Defendant next attempts to "categorically" invoke Exemption 7(E), which exempts from disclosure records or information compiled for law enforcement purposes to the extent the production of such records:

> . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). While Defendant quotes *Smith v. Bureau of Alcohol, Tobacco and Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) for the proposition that "Exemption 7(E) provided categorical protection to information related to law enforcement techniques" (Supplemental Memorandum at 13), Defendant ignores key, qualifying language immediately following this quote:

> In some cases, it is not possible to describe secret law enforcement techniques, even in general terms, without disclosing the very information to be withheld. *Still, that does not excuse the agency from providing the Court with information sufficient for it to decide whether the material is properly withheld under Exemption 7(E).*
>
> BATF's descriptions of its deletions pursuant to Exemption 7(E) are too conclusory for this Court to determine whether the exemption was properly invoked. Defendant must provide greater detail as to why the release of the information deleted from the two documents at issue would compromise law enforcement by revealing information about investigatory techniques that are not widely known to the general public. If the necessary detail would disclose the very information it seeks to withhold, defendant may provide this detail to the Court in an *in camera* declaration and may submit the documents themselves for an *in camera* review.

*Smith*, 977 F. Supp. at 501 (emphasis added). *Smith* thus refutes Defendant's claim that a "categorical" assertion of Exemption 7(E) is appropriate. Moreover, to the extent the records reveal purely factual information, such as the dates of particular visits, the reasons for particular visits, or the persons or offices visited, Defendant's affidavits fail to explain sufficiently why such information necessarily would reveal any law enforcement techniques, procedures, or guidelines. A "categorical" response does not provide sufficient assurances here that purely factual information about Abramoff's visits to the White House will not be withheld improperly.[3] At a minimum, an *in camera* submission is appropriate if Defendant believes it cannot describe the records in any greater detail on the public record. *Smith*, 997 F. Supp. at 501.

      Finally, Defendant also attempts to invoke Exemption 7(F), which exempts from disclosure "records or information compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). As with Defendant's submissions regarding its Exemption 7(E) claim, its affidavits are too conclusory and not supported with sufficient detail for the Court to determine whether the claim of exemption applies. *Smith*, 977 F. Supp. at 501-02. In addition, a categorical approach again does not provide sufficient assurances that purely factual information about Abramoff's visits to the White House will not be withheld improperly.

---

[3] In this regard, FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). If the Court is not going to hold Defendant to the April 25, 2006 order requiring all responsive records be produced without redactions or claims of exemption, any reasonably segregable information contained in the records at issue must be segregated out and produced.

### III. <u>Conclusion</u>.

Defendant's "supplemental" motion attempts to renege on the parties' joint stipulation and avoid the clear and unambiguous requirements of the Court's April 25, 2006 order that all documents be produced "without redactions or claims of exemption." It should not be allowed do so. In the event the Court decides not to hold Defendant to the parties' joint stipulation and agreed order, Defendant cannot invoke a "*Glomar*" response, especially because it already has acknowledged the existence of records regarding Jack Abramoff's visits to the White House. Nor has Defendant sufficiently demonstrated that a "categorical" approach to asserting claims of exemption under Exemptions 2, 7(E), and 7(F) is proper here. To the extent Defendant seeks to withhold such records, it must produce any reasonably segregable portions of the records at issue and provide a *Vaughn* index detailing its claims of exemption. In the alternative, the Court should review the records *in camera* to determine whether the records, or any portions thereof, should be withheld. Defendant's "supplemental" motion for summary judgment should be denied.

Dated: December 14, 2007                                Respectfully submitted,

                                                        JUDICIAL WATCH, INC.

                                                        _____/s/_____
                                                        Paul J. Orfanedes
                                                        D.C. Bar. No. 429716
                                                        Suite 500
                                                        501 School Street, S.W.
                                                        Washington, D.C. 20024
                                                        (202) 646-5172

                                                        *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES SECRET SERVICE, )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:06-CV-00310 (RMC) |

**PLAINTIFF'S RESPONSE TO STATEMENT OF MATERIAL FACTS
IN SUPPORT OF DEFENDANT'S "SUPPLEMENTAL"
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel, respectfully submits this response to the Statement of Material Facts in Support of Defendant's "Supplemental" Motion for Summary Judgment filed by Defendant U.S. Secret Service:

1. Undisputed.

2. Plaintiff disputes that the parties' stipulation merely was "endorsed" by the Court. Defendant agreed to be bound by a court order requiring it to produce any and all documents responsive to Plaintiff's January 20, 2006 Freedom of Information Act ("FOIA") request, without redactions or claims of exemption, on or before May 10, 2006, and the Court entered a clear and unambiguous order, punishable by contempt, to this effect. *See* Joint Stipulation and Agreed Order, Docket Entry No. 8, attached as Exhibit A to Plaintiff's Opposition to Defendant's "Supplemental" Motion for Summary Judgment.

3. As Defendant is in sole possession of all facts regarding its alleged search, Plaintiff is unable to dispute Defendant's factual assertions regarding any such search. Plaintiff

disputes that whether the alleged search was reasonable is an issue of fact. It is an issue of law to be determined by the Court.

4. Undisputed.

5. Plaintiff does not dispute that Defendant filed a declaration in December 2006 describing additional, potentially relevant categories of records. Plaintiff does not dispute that no additional records were produced. As Defendant is in sole possession of all facts regarding its alleged search in December 2006, Plaintiff is unable to dispute Defendant's factual assertions regarding its search.

6. Undisputed.

7. Undisputed.

8. As Defendant is in sole possession of all facts regarding its alleged search, Plaintiff is unable to dispute Defendant's factual assertions regarding any such search.

9. Plaintiff disputes that Defendant is incapable of confirming or denying whether it has any Sensitive Security Records responsive to Plaintiff's January 20, 2006 FOIA request. Plaintiff does not dispute that Defendant has elected not to confirm or deny whether it has any Sensitive Security Records responsive to the request.

10. As Defendant is in sole possession of all facts regarding the records at issue, Plaintiff is unable to dispute Defendant's factual assertions regarding any such records.

11. Plaintiff disputes that whether the records at issue are exempt from disclosure is an issue of fact. It is an issue of law to be determined by the Court.

Dated:  December 14, 2007                    Respectfully submitted,

                                                      JUDICIAL WATCH, INC.

                                                         /s/
                                                    Paul J. Orfanedes
                                                    D.C. Bar. No. 429716
                                                    Suite 500
                                                    501 School Street, S.W.
                                                    Washington, D.C.  20024
                                                    (202) 646-5172

                                                    *Attorneys for Plaintiff*