UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-310 (RMC) |
| UNITED STATES SECRET SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR CONSOLIDATION

## INTRODUCTION

As defendant demonstrated in its opening brief, the Court should consolidate Judicial

Watch, Inc. v. United States Secret Service, 06-CV-310 (RMC), and Citizens for Responsibility

and Ethics in Washington ("CREW") v. Department of Homeland Security, 06-CV-883 (D.D.C.)

(RCL). Judicial Watch and CREW disagree.[1] Neither Judicial Watch or CREW can establish,

however, that there exist sufficient factual and legal differences to justify two different judges

having to review the shared questions of law and fact that permeate these cases. Specifically,

both cases turn largely on whether the Department of Homeland Security ("DHS"), through its

component, the United States Secret Service, (i) conducted a reasonable search under the

Freedom of Information Act ("FOIA") for records of visits to the White House Complex created

after 2001 and (ii) properly supported claimed exemptions, which are virtually identical in both

cases. Thus, the judge hearing each case will need to acquaint herself or himself with the records

---

[1] CREW did not move for leave to intervene prior to filing its opposition brief. Thus, the
Court could choose to disregard CREW's filing.

of visits created since that time, the law governing the determination of whether an agency has conducted an adequate search under the FOIA, and the standards for assessing claimed exemptions. Originally, these cases were assigned to the same judge – Judge Penn – so notwithstanding their similarity, there was no need for consolidation. After Judge Penn's death, however, these cases were assigned to different judges. Thus, the similarity between these cases gained new meaning – and that similarity justifies consolidation. The alleged differences adverted to by Judicial Watch and CREW in their opposition briefs either wither under scrutiny or pale in comparison to the similarity. Accordingly, the Court should grant defendant's motion for consolidation.

## ARGUMENT

Though the parties differ on the propriety of consolidation, all involved agree on the governing standard. That is, the Court has discretion to consolidate civil actions when the cases share common issues of law or fact, consolidation would serve the interests of judicial economy, and the parties would not be prejudiced by consolidation. See Judicial Watch, Inc. v. United States Department of Energy, et al., 207 F.R.D. 8, 9 (D.D.C. 2002); American Postal Workers Union v. United States Postal Svc., 422 F.Supp.2d 240, 245 (D.D.C. 2006); Fed. R. Civ. P. 42.

Under this standard, consolidation is warranted. See Memorandum in Support of Defendant's Motion for Consolidation, Nov. 30, 2007 ("Memo."), Doc. No. 35. Both suits raise the same core claim under the FOIA and present the same central legal issue. At their core, both actions seek to compel DHS to disclose, pursuant to the FOIA, the same types of records generated during the same period of time – i.e., records of visits to the White House from January 1, 2001 to the present. See Judicial Watch Complaint for Declaratory and Injunctive

Relief, February 22, 2006 ("JW Compl."), Doc. No. 1, ¶ 5, pp. 3-4; CREW Second Amended

Complaint for Declaratory Judgment and Injunctive Relief, August 9, 2006 ("CREW Compl."),

Doc. No. 30,  ¶¶ 24, 47.  In both cases, DHS has released all responsive, non-exempt records

found after reasonable searches and withheld privacy-related information and, to the extent any

exist, certain responsive records[2] referred to as Sensitive Security Records because to release any

such records would compromise the Secret Service's ability to carry out its protective function.[3]

Memorandum in Support of Supplemental Motion for Summary Judgment [Against Judicial

Watch], Nov. 30, 2007 ("SJ Memo."), Doc. No. 36, at 1-2; SJ Memo. CREW at 1-3.  (Indeed, the

similarity of the actions is evident from the face of the summary judgment memorandum filed in

each action – they share much in the way of substance, bearing the same thesis and similar

structures and wording.  See SJ Memo.; SJ Memo. CREW.)  Resolution of the FOIA claims in

both cases, then, will depend on the reasonableness of the Secret Service's search for the same

kind of records and the propriety of the claimed exemptions for privacy-related and security-

related information.  See SJ Memo.; SJ Memo. CREW.  Assigning that task to one judge would

serve the interests of judicial economy by obviating the need for two judges to delve into the

same factual and legal issues.  See Judicial Watch v. Department of Energy, 207 F.R.D at 8

---

[2] The Secret Service assumes that the records it has searched and produced are "agency" records, as that term is used in the FOIA, solely for the purposes of its motions to dismiss and its supplemental motion for summary judgment; it does not otherwise concede, through its use of the word "responsive" or otherwise, that the records it has searched or produced are agency records, as opposed to records governed by the Presidential Records Act, 44 U.S.C. § 2201 et seq.  To that end, records have been released to plaintiff solely as a discretionary matter.

[3] The Secret Service has also withheld certain security-related information from two Large Event Summaries released to CREW.  Memorandum in Support of Supplemental Motion for Summary Judgment on Claims I-III [Against CREW], Dec. 11, 2007 ("SJ Memo. CREW"), Doc. No. 75, at 19-20.

(consolidating two FOIA actions brought by different plaintiffs in the interests of judicial economy).

Judicial Watch and CREW recite a litany of supposed legal and factual differences between these cases. Plaintiff's Opposition to Defendant's Motion for Consolidation, Dec. 4, 2007 ("JW Opp."), Doc. No. 37, at 1-4; Opposition of [CREW] to Defendant's Motion for Consolidation, Dec. 4, 2007 ("CREW Opp."), Doc. No. 38, at 2-5. Both highlight that the parties in the Judicial Watch case entered into a joint stipulation and agreed order ("Joint Stipulation") by which defendant pledged to produce responsive records by May 10, 2006, Joint Stipulation and Agreed Order, April 25, 2006, Doc. No. 8, and that the parties to the CREW case did not enter into such an agreement. See JW Opp. at 2-3; CREW Opp. at 4-5. This matters, they contend, because the FOIA issue to be resolved in the Judicial Watch case is whether defendant complied with the Joint Stipulation, whereas the FOIA issue to be resolved in the CREW case is whether defendant complied with the terms of the FOIA itself. See CREW Opp. at 4-5.

That the Judicial Watch case involves the Joint Stipulation is a distinction without a difference. The Joint Stipulation requires largely what the FOIA requires, namely, that defendant conduct a reasonable search and release records that would be deemed responsive under the FOIA. See, e.g., Plaintiff's Surreply to Defendant U.S. Secret Service's Reply in Support of Its Motion to Dismiss, July 24, 2006, Doc. No. 29, at 2-5 (focusing on the reasonableness of DHS's search). The Joint Stipulation also states that defendant will release responsive records without "redactions or claims of exemption," Joint Stipulation at 1; of course, the FOIA does not prohibit an agency from asserting exemptions. And in the Judicial Watch case, defendant has claimed exemptions over privacy-related information and records (to the extent any exist) that could not

be released without subverting the Secret Service's protective function. SJ Memo. at 8-17. The

difference with respect to exemptions matters, then, only with respect to information that can be

used to facilitate, respectively, identity fraud, or attacks on the President, Vice-President, and

White House Complex. See id. at 8-17. As Judicial Watch has no right to this kind of

information, see id. at 8 n.5, the contentions raised by CREW and Judicial Watch regarding the

Joint Stipulation do not matter, especially when viewed in light of the similarities between the

two cases.

Judicial Watch and CREW also argue that differences between their FOIA requests

counsel rejection of the motion to consolidate. They do not. The differences are nonexistent or

insignificant. Both assert that Judicial Watch seeks different records than CREW. First, they

suggest that Judicial Watch seeks only "White House visitor logs," whereas CREW seeks any

records relating to visits. In fact, Judicial Watch seeks "all agency records concerning, relating

to, or reflecting * * * [a]ll White House visitor logs from January 1, 2001 to present that reflect

the entries and exit(s) of lobbyist Jack Abramoff from the White House." Freedom of

Information Act Request, Jan. 20, 2006 ("FOIA Request"), at 1 (attached as Exhibit 2 to Doc.

No. 12). For its part, CREW seeks "all records relating to any visit" made by certain named

individuals. FOIA Request, Feb. 2, 2006, at 1 (attached as Exhibit A to CREW Compl.).

CREW insists that the FOIA requests are meaningfully different because it has broadly

defined White House Complex to include "any office within the Executive Office of the

President ["EOP"], the residence of the President, the Old and New Executive Office Buildings,

and any other office or space on the grounds of the White House." CREW Opp. at 3 (internal

citations and quotations omitted). CREW's request is broader than Judicial Watch's to the extent

it seeks records from offices of the EOP outside the grounds of the White House Complex.  See

Declaration of Kathy J. Lyerly [in CREW], Sept. 21, 2006 ("Lyerly Decl. CREW") (attached to

Doc. No. 45), ¶¶ 3-4, 24; Declaration of Paul S. Morrissey [in Judicial Watch], December 12,

2006 ("Morrissey Decl.") (attached to Notice of Filing, December 12, 2006, Doc. No. 31), ¶ 3

(incorporating discussion of these records by reference).   But the Secret Service does not

maintain access systems that reflect entry to and exits from these offices, Lyerly Decl. CREW

¶ 24, so the additional breadth of CREW's request is irrelevant.[4]

Both CREW and Judicial Watch also note that Judicial Watch seeks records for visits by

former lobbyist Jack Abramoff, whereas CREW seeks records for visits by Mr. Abramoff and

seven other individuals.  JW Opp. at 2-3; CREW Opp at 2.  No matter:  That different names are

listed on the FOIA request does not alter the kinds of records that are responsive to the requests

or the methods that should have been used to probe those records.  Thus, this difference will not

factor into the Court's inquiry into the reasonableness of the search, which turns on the methods

used by defendant.  See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir.

2003).

In addition to emphasizing supposed differences between the FOIA requests, Judicial

Watch and CREW direct the Court's attention to purported distinctions stemming from the

litigation spawned by these requests.  But Judicial Watch and CREW have either created these

purported differences or exaggerated their importance.  Both suggest that the fact that CREW has

---

[4] CREW does, unlike Judicial Watch, seeks records of visits to the Vice President's
Residence.  But cases need not be identical for consolidation to be appropriate, and this
difference does not overcome the benefits of consolidation, as set forth in defendant's motion
and accompanying supporting materials.  See Memo. at 3-4.

sought discovery somehow distinguishes its case from the Judicial Watch case. JW Opp. at 3; CREW at 4. It does not. Judicial Watch also seeks discovery. See, e.g., Plaintiff's Response to Defendant U.S. Secret Service's Amendment to It's Opposition to Plaintiff's Motion to Compel, July 24, 2006, Doc. No. 30, at 5 n.1. What is more, Judicial Watch states that the CREW case involves challenges to the "custody and control" over certain records transferred, prior to the receipt of the FOIA request, to the White House, and implies that its case raises no similar issue. Judicial Watch, however, has challenged the transfer of records to the White House and has argued that records transferred might be in the control of defendant, even though defendant has stated otherwise in sworn declarations. See Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Reply in Support of Its Motion to Compel, June 7, 2006, Doc. No. 17, at 5-8; Morrissey Decl. ¶ 3 (incorporating discussion of transferred records).

Finally with regard to these alleged litigation-related differences, both Judicial Watch and CREW rely on an insignificant difference in the claims raised in the two cases: CREW's complaint, unlike Judicial Watch's, included a Federal Records Act-related Administrative Procedure Act ("APA") claim, challenging defendant's policy of transferring certain records to the White House, CREW Compl. ¶¶ 44-48. JW Opp. at 3-4; CREW Opp. at 3-4. This focus is wholly misplaced. Cases need not be identical to be consolidated, Memo. at 3-4, and the Court could handle the APA claim separately from the strikingly similar FOIA claims; this difference does not undo the similarity in the FOIA claims.

Drawing on these supposed factual and legal differences, Judicial Watch and CREW conclude that consolidating these cases would not serve the interests of judicial economy. JW

Opp. at 4; CREW Opp. at 5. As demonstrated above, this conclusion rises from a faulty premise. The differences identified by Judicial Watch and CREW vanish upon careful inspection or are easily overwhelmed by the efficiency gains attendant to having the same judge hear both cases. See Memo. at 2-5.

Both Judicial Watch and CREW maintain that consolidating these cases will result in prejudice to itself or the other. JW Opp. at 4-5; CREW Opp. at 5. Judicial Watch's assertion of prejudice comprises two arguments: (i) the CREW case is more complex; and, (ii) "the CREW lawsuit is younger (the two motions to be decided in this lawsuit were fully briefed by the time the plaintiff in the CREW lawsuit has only just filed its Second Amended Complaint)." JW Opp. at 4. Neither argument is convincing. This memorandum and the opening brief demonstrate that the CREW case is not meaningfully more complex. And that the CREW case may have been in a different procedural posture than this case at some earlier time is wholly irrelevant. Both cases are in similar postures now, when the consolidation will occur. In both cases, defendant has filed a motion for summary judgment with respect to the FOIA matters, demonstrating that all non-exempt, responsive records discovered in the course of reasonable search have been released and that privacy-related information and any extant responsive Sensitive Security Records are exempt from disclosure under the FOIA. See SJ Memo.; SJ Memo CREW.

CREW premises its assertion of prejudice on the argument that the cases are at different stages: "Judicial Watch is seeking to enforce the Court-ordered obligations encompassed by the stipulation, while CREW is seeking discovery and has opposed two pending motions to dismiss as legally and factually unfounded." CREW Opp. at 5. As established above, the difference between defendant's obligations under the Joint Stipulation and the FOIA are illusory in the

present circumstances. What is more, both parties seek discovery, and both have opposed defendant's efforts to have the cases dismissed. Therefore, CREW's assertion of prejudice is untenable.

CREW raises one final argument before closing. CREW asserts that the government did not explain why it has not previously attempted to consolidate these cases. CREW Opp. at 5. Id. at 6. The explanation is simple: Defendant did not move for consolidation previously because these two cases had been assigned to the same judge, the late Judge Penn. Thus, there was no need to move for consolidation to serve the interests of judicial economy. The interests of judicial economy had been served by the initial assignment of the cases. After Judge Penn's passing, these cases where assigned to different judges, and the impetus for this motion was created.

## CONCLUSION

For the reasons stated above and in defendant's opening memorandum, the Court should consolidate Judicial Watch, Inc. v. United States Secret Service, 06-CV-310 (RMC), and Citizens for Responsibility and Ethics in Washington ("CREW") v. Department of Homeland Security, 06-CV-883 (D.D.C.) (RCL).

Dated: December 14, 2007                                  Respectfully submitted,

                                                          JEFFREY S. BUCHOLTZ
                                                          Acting Assistant Attorney General

                                                          JEFFREY A. TAYLOR
                                                          United States Attorney

                                                          CARL J. NICHOLS

Deputy Assistant Attorney General

JOSEPH H. HUNT
Branch Director

ELIZABETH J. SHAPIRO
Assistant Branch Director

OF COUNSEL:

s/ Justin M. Sandberg

LIZA MURPHY                              JUSTIN M. SANDBERG
MOLLY WEBER                              (Ill. Bar. No. 6278377)
United States Secret Service             Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Avenue, N.W. #7224
                                         P.O. Box 883 Ben Franklin Station
                                         Washington, D.C. 20044
                                         Telephone:  (202) 514-3489
                                         Facsimile:  (202) 616-8202
                                         E-mail:  justin.sandberg@usdoj.gov

                                         Attorneys for Defendant