UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES SECRET SERVICE, ) | |
| ) | |
| Defendant. ) | |
| ) | Civil Action No. 06-310 (RCL) |
| CITIZENS FOR RESPONSIBILITY AND ) | |
| ETHICS IN WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Court should enter summary judgment in favor of defendant with respect to Judicial Watch's complaint: There is no disputed issue of material fact regarding defendant's compliance with the Freedom of Information Act ("FOIA") as mediated through the Joint Stipulation and Agreed Order, April 25, 2006 ("Joint Stipulation"), Doc. No. 8. Defendant has (i) conducted a reasonable search and (ii) fully justified its decision to refuse to acknowledge whether any responsive Sensitive Security Records exist (i.e., to employ a Glomar response) and, in the

1

alternative, to withhold as categorically exempt under Exemptions 2, 7(E), and 7(F) any Sensitive Security Records that may exist.

Plaintiff's response does not undermine defendant's demonstrated entitlement to summary judgment. Plaintiff says almost nothing about the reasonability of defendant's search. Instead, plaintiff focuses on the results of defendant's searches, and insists that defendant violated the Joint Stipulation by failing to release any responsive Sensitive Security Records by May 10, 2006; May 10th was the deadline in the Joint Stipulation for releasing responsive records found after a reasonable search. But the parties have interpreted the Joint Stipulation to require a reasonable search, not perfection, and defendant conducted a reasonable search. Also, based on plaintiff's interpretation of its request, Sensitive Security Records, as a category, are not responsive, so plaintiff has no reason to complain about not being alerted to their existence earlier (or to challenge defendant's invocation of the Glomar doctrine and Exemptions 2, 7(E), and 7(F)).

Plaintiff makes three arguments regarding defendant's withholdings, namely, that the Joint Stipulation prohibits them, that the Glomar doctrine does not apply to this case because the fact that Jack Abramoff visited the White House Complex is widely known and has been officially acknowledged by defendant, and that the individual claims of exemption have not been properly supported. None of these arguments holds water. First, the Joint Stipulation does not prevent defendant from claiming exemptions: Defendant fully discharged its duty under the Joint Stipulation and so is no longer bound by it, and compelling public policy reasons, namely ensuring the safety and security of Secret Service protectees, counsel against requiring defendant to release any responsive records that may exist. Second, the Glomar doctrine applies easily to

this case. Revealing whether responsive records exist would undermine the Secret Service's ability to discharge its protective duty, and pursuant to Exemptions 2 and 7(e) defendant need not acknowledge whether responsive records exist in this circumstance. Third, the exemptions are well supported.

For the reasons stated in defendant's opening brief as elaborated below, the Court should enter summary judgment in favor of defendant on plaintiff's FOIA claim.

## ARGUMENT

In its opening brief, Defendant established three points and, in doing so, its entitlement to summary judgment. First, defendant demonstrated that, by May 10, 2006, it had released all responsive records found after a reasonable search.[1] See Opening Brief at 6-8 and sources cited therein. Second, defendant properly invoked the Glomar doctrine, establishing that it could neither confirm nor deny whether responsive Sensitive Security Records exist, as to do so would undermine the Secret Service's ability to carry out its protective function. See 5 U.S.C. §§ 552(b)(2), (b)(7)(E); Opening Brief at 8-9; Declaration of Craig W. Ulmer, November 30, 2007 ("Ulmer Decl."), ¶ 19 (attached as Exhibit 2 to Opening Brief). In conjunction with the fact that

---

[1] Notwithstanding the reasonableness of its initial search, defendant has continued to apprise plaintiff and the Court of records that it has only more recently identified as being responsive or potentially responsive to Judicial Watch's FOIA request. See Memorandum in Support of Supplemental Motion for Summary Judgment, Nov. 30, 2007 ("Opening Brief"), Doc. No. 36, at 6-8. Though plaintiff darkly portrays defendant's efforts to keep it and the Court informed of records newly identified as being responsive or potentially responsive, Plaintiff's Opposition to Defendant's "Supplemental" Motion for Summary Judgment, Dec. 14, 2007 ("Response"), Doc. No. 41, at 3-4, in fact, defendant's efforts merely evince its good faith, Opening Brief at 6-8. With respect to these efforts, defendant notes that plaintiff has misstated the date of defendant's second release of records by a full year; it took place in July 2006, not July 2007. Response at 4; Defendant's Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction, July 7, 2006 ("Reply"), Doc. No. 22.

defendant conducted a reasonable search, the Glomar doctrine dictates that the Court enter summary judgment in favor of defendant. See Frugone v. CIA, 169 F.3d 772, 774-775 (D.C. Cir. 1999); Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). In the alternative, even if the Glomar doctrine is inapplicable, defendant established that the Sensitive Security Records are categorically exempt from disclosure pursuant to FOIA Exemptions 2, 7(E) and 7(F), as to reveal the information contained within any responsive Sensitive Security Records that might exist would undermine the Secret Service's ability to discharge its protective function. Opening Brief at 9-17. These well-supported exemptions, when combined with defendant's reasonable search, also entitle defendant to summary judgment. See Truitt, 897 F.2d at 542; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

Plaintiff opens the argument portion of its response by suggesting that defendant violated the Joint Stipulation by failing to turning over, by May 10, 2006, any responsive Sensitive Security Records. Response at 4-5. But the Joint Stipulation did not require perfection: It required that defendant release all responsive records found after a reasonable search. See, e.g., Plaintiff's Surreply to Defendant U.S. Secret Service's Reply in Support of Its Motion to Dismiss, July 24, 2006, Doc. No. 29 ("Plaintiff's Surreply"), at 2-5 (focusing on the reasonableness of defendant's search). Defendant conducted a reasonable search, see Opening Brief at 6-8 and sources cited therein, and so fully complied with the Joint Stipulation, and the requirements for summary judgment.

Plaintiff has previously recognized that the Joint Stipulation, like the FOIA, requires nothing more than a reasonable search. See, e.g., Plaintiff's Surreply at 2-5. Only in this brief has plaintiff begun to press its absolutist interpretation of the Joint Stipulation. This

4

interpretation is untenable. As the product of a negotiation between the parties that has been endorsed by the Court, the Joint Stipulation, like a consent decree, is a hybrid document, possessing the elements of a contract and a court order. See Pigford v. Veneman, 292 F.3d 918, 923 (D.C. Cir. 2002). When it comes to interpreting such hybrid documents, the contractual nature controls, and ordinary principles of contract law apply. See Segar v. Mukasey, --- F.3d ---, 2007 WL 4139390, at * 5 (D.C. Cir. Nov. 23, 2007). One principle requires that contracts be interpreted in a commonsense fashion. Call v. Ameritech Management Pension Plan, 475 F.3d 816, 821 (7th Cir. 2007) (noting that there is a long tradition of reading contracts sensibly). Common sense dictates that the government would not commit itself to conducting a perfect search, especially as the FOIA does not hold agencies to such a divine standard. In any case, even if the Court concludes that defendant violated the Joint Stipulation on May 10, 2006 – which it did not – by not identifying Sensitive Security Records as being potentially responsive, that does not mean that defendant is not now (after conducting additional searches and releasing additional records, see Opening Brief at 6-8) entitled to summary judgment.

Plaintiff's argument regarding defendant's document release suffers from another flaw. Plaintiff now contends that its FOIA request encompassed only "All White House visitor logs from January 1 2001, to present that reflect the entries and exits of lobbyist Jack Abramoff from the White House." Response at 1. Up to this point in the litigation, defendant has treated plaintiff's request as being somewhat more broad. See Freedom of Information Act Request, January 20, 2006 ("FOIA Request"), at 1 (attached as Exhibit 2 to Doc. No. 12) (seeking all records "relating" to the White House visitor logs referenced in the above-quoted portion of plaintiff's response). But if that is not the case, plaintiff's argument regarding defendant's failure

to release any response Sensitive Security Records is stillborn because those records would not be responsive to its request. Sensitive Security Records are not "visitor logs," but are security-related records that reflect the fact of a visit only incident to their primary security function. See Ulmer Decl. ¶ 10; Second Declaration of Paul S. Morrissey, November 30, 2007 ("Second Morrissey Decl."), ¶ 3 (attached as Exhibit 1 to Opening Brief). Of course, if these records, as a category, are not responsive to plaintiff's request, then plaintiff has no grounds on which to assail the fact that defendant did not release any extant responsive Sensitive Security Records, and summary judgment is warranted.

The Joint Stipulation furnishes the foundation for plaintiff's next argument, namely, that defendant may not, consistent with that document, invoke any FOIA exemptions. Response at 4-5. The Joint Stipulation provides that defendant will release responsive records "without redactions or claims of exemption." Joint Stipulation at 1. But this language lacks the significance imputed to it by plaintiff. Contract principles govern the interpretation of the Joint Stipulation. See Segar, 2007 WL 4139390, at * 5. Black-letter contract law holds that a party's full performance of its duty under a contract discharges that duty. Restatement (Second) of Contracts § 235 (1981). Defendant released all responsive records found after a reasonable search. See Opening Brief at 6-8 and sources cited therein. Thus, it fully discharged its duty under the Joint Stipulation, and the Joint Stipulation's language regarding redactions and exemptions is inapplicable to the Sensitive Security Records.[2] In any case, courts interpret contracts in light of public policy and will not enforce contractual requirements that contradict

---

[2] What is more, defendant had not understood Sensitive Security Records to be potentially responsive at the time that it entered the Joint Stipulation. Opening Brief at 7. Thus, it did not, in the Joint Stipulation, consent to be bound with respect to these records.

public policy. Paperworkers v. Misco, 484 U.S. 29, 42 (1987) ("[A] court may refuse to enforce contracts that violate * * * public policy."). Certainly, requiring defendant to divulge whether any responsive Sensitive Security Records exist, and if they exist, to divulge the contents of those records, would violate public policy given that releasing this information could jeopardize the Secret Service's ability to carry out its protective function. See Ulmer Decl. ¶¶ 19, 20; U.S. News & World Report v. Department of the Treasury, Civil Action No. 84-2303, 1986 U.S. Dist. LEXIS 27634, at *6-7 (D.D.C. Mar. 26, 1986) (explaining that "it is difficult to imagine agency procedures or techniques more deserving of protection" than those employed by the Secret Service in its protective capacity). Thus, defendant should not be required to confirm or deny the existence of responsive Sensitive Security Records, and if any exist, to release them.

Moving on from the Joint Stipulation, plaintiff next argues that defendant inappropriately invoked the Glomar doctrine because it "cannot be said [in this case] that the *fact* of the existence or nonexistence of any responsive agency records falls within any recognized FOIA exemption." Response at 6 (emphasis in the original). Even more, plaintiff asserts, defendant cannot invoke the Glomar doctrine because it has already officially acknowledged the existence of "records of Abramoff's visits to the White House." Id. at 7.

Neither argument withstands scrutiny. Contrary to plaintiff's assertion, the fact of the existence or nonexistence of responsive Sensitive Security Records falls within FOIA Exemptions 2 and 7(E). FOIA Exemption 2 relieves an agency of the duty to release "predominantly internal" information that could be used to circumvent agency rules or practices, Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992), and "Exemption 7(E) provides categorical protection to information related to law enforcement techniques," Smith v. ATF, 977

F. Supp. 496, 501 (D.D.C. 1997). In the portion of his declaration entitled "FOIA Exemptions (b)(2) and (b)(7)(E)," Craig Ulmer attests that "[d]isclosing any responsive information (including whether a search for a particular individual's name located, or did not locate, a record) could, when repeatedly combined with other similar information, reasonably be expected to enable individuals to circumvent the law by revealing information regarding the circumstances that trigger when certain security steps are taken, and the manner through which those additional security checks are taken or information is gathered." Ulmer Decl. ¶ 19. Thus, defendant has established a paradigmatic case for the application of Exemptions 2 and 7(E). Sensitive Security Records encompass "predominantly internal" information – i.e., information used to guide defendant's conduct (specifically regarding when to employ additional security procedures). Crooker v. ATF, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc); Opening Brief at 12. What is more, if the fact of the existence or nonexistence of responsive records were released, it would facilitate circumvention of defendant's security measures by revealing information about them to the public, and these security measures are both matters of agency practice and law enforcement techniques. See Ulmer Decl. ¶¶ 15, 19; Opening Brief at 9-16.

Plaintiff's second Glomar-related argument similarly fails. Plaintiff correctly notes that the D.C. Circuit has held that an agency has waived its ability to refuse to confirm the existence of records if it has already officially acknowledged the records, see Wolf v. CIA, 473 F.3d 370, 379-380 (D.C. Cir. 2007). Response at 6-8. But plaintiff errs by failing to recognize a basic point: The official acknowledgment doctrine applies only to records that have been acknowledged (and other records that convey the same information), not all records about an individual. See Response at 6-8. For example, in Wolf, the CIA had officially acknowledged the

existence of certain records regarding former Colombian politician Jorge Eliecer Gaitan by having its Director read from them in Congressional testimony in 1948. Id. at 379. Accordingly, the CIA could not later invoke the Glomar doctrine with respect to information regarding the existence of those records which it had already publicly acknowledged. Id. But, the Court held, the CIA had not waived its right to invoke the Glomar doctrine with respect to any other records regarding Mr. Gaitan: "The CIA's official acknowledgment waiver relates only to the existence or nonexistence of the records about Gaitan disclosed by [the CIA Director's] testimony. As a result, Wolf is entitled to disclosure of that information, namely the existence of CIA records about Gaitan that have been previously disclosed (but not any others)." Id.

    Defendant has never officially acknowledged the existence or non-existence of Sensitive Security Records relating to Jack Abramoff, the subject of plaintiff's FOIA request. And in accord with Wolf (and common sense), defendant has not waived its ability to refuse to confirm the existence of Sensitive Security Records simply because it has acknowledged the existence of (and, in fact, has released) other records, namely records with WAVES and ACR data, which reflect Mr. Abramoff's visits to the White House, but which do not reveal the security-related information that would be disclosed by an acknowledgment of the existence or non-existence of Sensitive Security Records. See, e.g., Ulmer Decl. ¶ 19 (explaining that these records would reveal information about defendant's security measures that is not known to the public). Thus, for the reasons explained above, the Glomar doctrine, in conjunction with defendant's reasonable search and release of non-exempt, responsive records, supports defendant's motion for summary judgment. See Frugone, 169 F.3d at 774-775; Truitt, 897 F.2d at 542.

Plaintiff next challenges defendant's alternative argument that, whether or not any Sensitive Security Records exist, any information contained in them would be categorically exempt from disclosure pursuant to Exemptions 2, 7(E), and 7(F). Response at 8-11. Plaintiff contends that defendant erred by invoking the exemptions in a categorical fashion instead of providing a Vaughn index, which would describe each document and explain why information is being withheld. Id. at 9. To this end, plaintiff asserts that defendant has not provided sufficient information to conclude that Sensitive Security Records as a category contain the type of information that would support the invocation of these exemptions. Id. Plaintiff also argues, with respect to Exemptions 7(E) and 7(F), that defendant has not explained how releasing "purely factual information," such as the dates and times of visits, from any responsive Sensitive Security Records that might exist would affect its law enforcement function. Id. at 10-11. Thus, plaintiff continues, defendant has not justified the fact that it has not released such information. Id. Plaintiff's arguments are wholly unconvincing.

The law supports defendant's categorical invocation of Exemptions 2, 7(E), and 7(F). See Schwarz v. United States Department of Treasury, 131 F.Supp. 2d 142, 150 (D.D.C. 2000) (concluding that "information concerning personal characteristics used by the Secret Service in evaluating the dangerousness of a subject and the threat potential to individuals protected by the Secret Service" is "clearly exempt from disclosure" pursuant to Exemptions 2 and 7(e)). The categorical invocation of an exemption (i.e., the invocation of an exemption with regard to a category of records) is appropriate when records in that category, by their nature, support the exemption. See The Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893 (D.C. Cir. 1995). Sensitive Security Records by their nature support defendant's assertion of Exemption 2.

Plaintiff challenges defendant's categorical assertion of this exemption on the basis that these records do not relate "solely" to defendant's internal rules and practices because they reflect visits by non-agency personnel to the White House Complex. Response at 9; 5 U.S.C. § 552(b)(2) (protecting records that "relate solely to the internal personnel rules and practices of an agency"). Plaintiff misunderstands the definition of "solely." The D.C. Circuit has held that a record sufficiently relates to an agency's internal practices if it is "used for predominantly internal purposes." Crooker, 670 F.2d at 1073. Sensitive Security Records, as a category, are used for predominantly internal purposes, namely, to alert defendant to potential security threats in order to facilitate scrutiny of those visitors and visits that might present the most serious security risks. See Opening Brief at 12. Thus, Exemption 2 applies to Sensitive Security Records as a category.

Plaintiff's argument with respect to Exemption 7(E), which exempts records from disclosure to the extent that disclosing the records "would disclose techniques and procedures for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E), also falls short. See Response at 11. "Exemption 7(E) provides categorical protection to information related to law enforcement techniques." Smith, 977 F. Supp. at 501. And defendant thoroughly explained in its opening brief how revealing the contents of these records could reveal law enforcement techniques: "[T]hese records are created in [the course] of conducting additional background checks and other security-related activities regarding certain visitors who are chosen based on details in their backgrounds and/or circumstances of their visits. Disclosing these records could, among other things, reveal the criteria – not generally known to the public – that defendant uses in choosing visitors for these additional background checks and other security-related activities."

Opening Brief at 15-16 (internal citations and quotations omitted); Ulmer Decl. ¶ 19; Schwarz, 131 F.Supp. 2d at 150.  What is more, defendant has also already explained why revealing "purely factual information," like the dates and time of visits reflected in any responsive Sensitive Security Records, would reveal law enforcement techniques:  Disclosing this information would reveal when these records are generated and so would provide information about the circumstances in which defendant conducts these additional background checks and other security-related activities.  See Ulmer Decl. ¶ 19.  Accordingly, Exemption 7(E) categorically exempts from disclosure any Sensitive Security Records that might exist.

Plaintiff raises the same arguments with respect to defendant's assertion of Exemption 7(F) as it raised with respect to defendant's invocation of Exemption 7(E).  Response at 11.  These arguments again fail.  Exemption 7(F) shields from disclosure "records or information compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Defendant's brief and declaration carefully explain how "[d]isclosing th[e] techniques and procedures" evidenced by all Sensitive Security Records "would permit an individual or organization to attempt to avoid certain security checks, potentially impeding defendant's efforts to identify persons who may be a threat to its protectees."  Response at 17; Ulmer Decl. ¶ 20.  And, of course, defendant has explained why the factual information identified by plaintiff cannot be segregated from the rest of any responsive Sensitive Security Record that may exist.[3]  See, e.g., Ulmer Decl. ¶ 19.

---

[3] In its opening brief, defendant explained that if any responsive Sensitive Security Records exist, it would withhold certain information pursuant to Exemptions 6 and 7(C). Opening Brief at 17 n.7.  Plaintiff has not challenged the invocation of those exemptions.

## CONCLUSION

For the reasons stated above and in defendant's opening submission, the Court should enter summary judgment in favor of defendant.

Dated: December 21, 2007

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

CARL J. NICHOLS
Deputy Assistant Attorney General
JOSEPH H. HUNT
Branch Director

ELIZABETH J. SHAPIRO
Assistant Branch Director

OF COUNSEL:

LIZA MURPHY
MOLLY WEBER
United States Secret Service

s/ Justin M. Sandberg
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. #7224
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-3489
Facsimile: (202) 616-8202
E-mail: justin.sandberg@usdoj.gov

Attorneys for Defendant