UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-310 (RCL) |
| ) | |
| UNITED STATES SECRET SERVICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| CITIZENS FOR RESPONSIBILITY AND ) | |
| ETHICS IN WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-883 (RCL) |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Presently before the Court are two motions: plaintiff Judicial Watch, Inc.'s Motion [12] to Compel Defendant United States Secret Service to Comply with this Court's Order and for Sanctions; and defendant United States Secret Service's Motion [14] to Dismiss plaintiff Judicial Watch, Inc.'s suit for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court concludes that the Secret Service has complied fully with the Court's order (the Stipulated Agreement). However, by searching only the subset of records in its physical possession at the time of the request, the Secret Service has not fully complied with

Judicial Watch's FOIA request.

## I.  BACKGROUND

### A.   Procedural Posture

Plaintiff Judicial Watch, Inc. made a Freedom of Information Act ("FOIA") request of defendant United States Secret Service on January 20, 2006.[1]  Plaintiff requested "[a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House." (Compl. 1.)  After defendant did not release any records within the time period provided by FOIA, plaintiffs filed suit on February 22, 2006.  On April 25, 2006, the parties entered into a stipulated agreement wherein defendant agreed to produce "any and all documents responsive to Plaintiff's . . . request, without redactions or claims of exemption," by May 10, 2006.  (Joint Stipulation and Agreed Order 1.)  After querying the two records systems it considered relevant—Access Control Records System ("ACR") records and Workers and Visitors Entry System ("WAVES") records—defendant released two ACR records on May 10, 2006, and stated that there were no more responsive records.  Plaintiff moved to compel compliance with the Stipulated Agreement and for sanctions on May 16, 2006.  Defendant moved to dismiss that same day.

While both motions were pending, defendant discovered that additional WAVES records predating October 2004 had been inadvertently retained on two Secret Service computers used to

---

[1] On January 3, 2008, the Court consolidated Civil Actions No. 06-310 and No. 06-883. All filings and orders referenced in this opinion occurred in No. 06-310 prior to consolidation and therefore address only plaintiff Judicial Watch, Inc. and defendant United States Secret Service.

transfer WAVES records to CD-ROM.  (2d Lyerly Decl. ¶3 (July 7, 2006).)  Defendant then had an internal team search those computers for additional WAVES files.  (*Id.*  ¶¶4–8.)  That search yielded six additional responsive WAVES records (*id.*  ¶9), which defendant released to plaintiff on July 7, 2006.  Both parties have addressed the July 2007 disclosure in their filings.

B.  **Background on ACR Records and WAVES Records**

1.  **ACR Records**

"ACR records consist of records generated when a pass holder, worker, or visitor swipes his or her permanent or temporary pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.  ACR records include information such as the pass holder's name and badge number, the time and date of the swipe, and the post at which the swipe was recorded."  (Lyerly Decl. ¶7 (May 16, 2006).)  ACR records are not created for every White House entrant, but only for those who pass through a turnstile with an electronic pass reader.  (*See id*. ¶16.)  ACR records are stored in a electronic database searchable by visitor name.  (*Id*. ¶12.)

2.  **WAVES Records**

"WAVES records consist of records generated when information is submitted to the Secret Service about workers and visitors whose business requires their presence at the White House Complex. WAVES records include information additional to that in the ACR records."  (*Id*. ¶8.)  Before they are transferred to CD-ROM, WAVES files are stored on a server.  (2d Lyerly Decl. ¶10 (July 7, 2006).)  Thirty to sixty days after the visit, the records are transferred to

individual agency computers, from which they are transferred to CD-ROMs (*id*.), which are searchable by visitor name (Lyerly Decl. ¶13 (May 16, 2006)). Prior to October 2004, the Secret Service had a "longstanding practice" of transferring those CD-ROMs to the White House, after which the transferred records were deleted from the Secret Service's system. (*Id*. ¶10.) As a result, at the time of plaintiff's FOIA request defendant only possessed WAVES records dating back to October 2004. (*Id*. ¶11.)

## II.  ANALYSIS: MOTION TO COMPEL

Plaintiff moves to compel compliance on the argument that defendant breached the Stipulated Agreement in both its initial May 10, 2006 disclosure (two ACR records) and its July 7, 2006 disclosure (six WAVES records).[2] The Court disagrees as to both allegations.

**A.   The May 10 Disclosure**

The May 10, 2006 disclosure consisted of two ACR records and zero WAVES records. Plaintiff claims that defendant withheld responsive records, thus violating the Agreement. Plaintiff argues that because that disclosure does not reflect several publicly acknowledged Abramoff visits, defendant must be withholding responsive records. The Court does not consider defendant's May 10 disclosure to be a violation of the Agreement.

As to ACR records, defendant's affidavits indicate that it has complied with plaintiff's FOIA request and the Stipulated Agreement. Representations in newspaper stories or elsewhere

---

[2]Defendant argues in opposition that plaintiff failed to comply with Local Rule 7(m)'s meet-and-confer requirement. But plaintiff's May 12, 2006 letter to defendant (Mot. to Compel Ex. 9), which apparently went unanswered, was sufficient to comply with 7(m) in this case.

of other Abramoff visits do not prove the existence of undisclosed ACR records, as ACR records are not created for every single White House visitor.[3] (*See* Lyerly Decl. ¶16 (May 16, 2006).) As to WAVES records, defendant has not fully complied with plaintiff's FOIA request (as discussed later in this opinion). However, at the time of the May 10 disclosure, defendant had a colorable argument that once WAVES records were transferred to the White House and internally deleted, they were no longer Secret Service records subject to plaintiff's request. This opinion rejects that argument, based in part on recent precedent. *See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 527 F. Supp. 2d 76 (D.D.C. Dec. 17, 2007) (Lamberth, J.). However, justice would not be served by punishing defendant for what at that time may well have been a good-faith interpretation of the Stipulated Agreement.

B.   The July 7 Disclosure

Plaintiff makes two breach claims specific to the records released on July 7, 2006: (1) that defendant impermissibly redacted Abramoff's date of birth and social security number, and (2) that defendant impermissibly redacted information by "scratching out" one visit on the paper "summary" of WAVES records from defendant's hard drives. The Court considers the redaction of date of birth and social security number to be harmless and not material. The scratching out of part of the summary, while confusing, does not breach the Agreement because the summary itself did not exist at the time of the Agreement.

The redaction of Abramoff's date of birth and social security number was not a material

---

[3] This point is expanded upon later in this opinion is connection with partial granting of defendant's Motion to Dismiss.

breach of the Stipulated Agreement. The information that plaintiff seeks is not Abramoff's personal details, but rather records of his White House visits. That fact, combined with the obvious privacy considerations, support the conclusion that this redaction was not a material breach.

     Neither is the scratching-out on the summary page a breach of the Agreement. (*See* Reply in Support of Mot. to Dismiss Ex. 4.) (Although the lines are scratched through, they are still partially legible.) Defendant explains that this record had been scratched out "because it appeared to be a duplicate of the first listing of appointment data on that same page." (2d Lyerly Decl. ¶13 (July 7, 2007).) Judging by the "UIN" field, the appointment date, and the appointment start and end times[4]—all of which are still legible—defendant appears to be correct. But, more importantly, the scratched-out portion was merely part of a *summary* of responsive records drawn from defendant's hard drives. (*See id.*) That summary cannot fairly be considered a "responsive record" subject to the Stipulated Agreement: it was created during the post-Agreement hard-drive search, and thus did not even exist at the time of the Agreement. Moreover, defendant has provided the actual records themselves, including the one corresponding with the scratched-out summary lines, and additional data on the records. (*See* Reply in Support of Mot. to Dismiss Exs. 2, 3 (WAVES record with UIN "U70552," appointment date "12/10/2001," appointment start time "5:30:00 PM," and appointment end time of "7:30:00 PM").) But the fact that the summary did not exist at the time of either the FOIA request or the Stipulated Agreement is enough to put this redaction outside the Agreement's

---

    [4]Defendant does not explain the significance of the UIN field, but based on the information disclosed by defendant it appears to be unique for each record.

reach.

### III. ANALYSIS: MOTION TO DISMISS

**A.     Legal Standard**

The mootness doctrine compels federal courts to dismiss an action for lack of subject matter jurisdiction if there is no ongoing case or controversy. In FOIA cases, there remains no case or controversy if the defendant agency has already fully complied with the plaintiff's information request, and the action can be dismissed.[5] *See Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) ("[I]f we are convinced [the agency has], however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.") (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). *See also Kissinger v. Reporters Comm. for Freedom of the Press*, 100 S. Ct. 960, 968 (1980) ("Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"). Thus the issue here is whether defendant has complied with plaintiff's FOIA request.

To comply with a FOIA request, an agency is required to execute a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Thus the question is not whether the agency has found every possible responsive document, but whether the search was reasonable in light of the

---

[5]It is true that in light of an established *policy or practice* of noncompliance with FOIA requests, the agency's mere release of the specific requested documents will not moot the case, for the agency's practice itself presents a live, ongoing controversy. *Payne Enter., Inc. v. U.S.*, 837 F.2d 486, 491 (D.C. Cir. 1988). However, as plaintiffs have neither alleged nor shown that defendant maintained such a policy or practice, this is not such a case.

relevant circumstances.  *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.") (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

In assessing the adequacy of an agency's FOIA search, the Court can rely on agency declarations provided they are "relatively detailed[,] nonconclusory[,] and . . . submitted in good faith."  *Weisberg*, 705 F.2d at 1351 (internal quotations and citations omitted).  The declarant need not have direct firsthand knowledge of the search, but she must have authority over and responsibility for the search itself.  *See Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("[The person] in charge of coordinating the [agency's] search . . . is the most appropriate person to provide a comprehensive affidavit.").

**B.     Analysis of Each Search**

Defendant argues that this case is moot because both its ACR records search and its WAVES records search met the required reasonableness threshold.  Therefore, defendant argues, the case is moot and the Court should dismiss for lack of jurisdiction.  The Court agrees with defendant as to the ACR records, but disagrees as to the WAVES records.  Because defendant retains all of its ACR records, but periodically transfers its WAVES records to the White House after internally deleting them, the two records categories must be analyzed separately.  The ACR search is discussed first, then the WAVES search.

### 1. The ACR Search

Defendant's search of its ACR records has met the reasonableness threshold, and thus defendant's motion to dismiss should be granted as to the ACR search.

Defendant's motion and attached declaration describe the ACR search and why it should be considered reasonable.[6] Plaintiff's principal counterargument rests upon the fact that defendant's search did not yield records of several publicly acknowledged Abramoff visits. Because defendant's search did not turn up evidence of those visits, plaintiff argues, defendant's search cannot have been reasonable or adequate.

Plaintiff's argument runs contrary to the established law. Again, what is required of the agency is a search reasonably calculated to produce the requested documents. *Weisberg*, 705 F.2d at 1351. "The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Steinberg*, 23 F.3d at 551. *See also Iturralde*, 315 F.3d at 315 ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search

---

[6]Plaintiff argues that the two Lyerly declarations are contradictory as to ACR record-keeping practices, and thus unreliable. The alleged inconsistency deals with whether ACR records are stored on a server or downloaded to CD-ROMs. (*See* Pl.'s Sur-Reply to Def.'s Reply in Support of Mot. to Dismiss 7–8.) A close reading of the two declarations reveals that the inconsistency is minor. The second Lyerly declaration does not say that ACR records themselves were downloaded to CD-ROMs, but that "data from the [WAVES] server, along with entry/exit data *from* ACR records," are downloaded and transferred to CD-ROM. (2d Lyerly Decl. ¶10 (July 7, 2006).) So the ACR records themselves are not downloaded (or erased), only information from them to supplement the WAVES records. This comes close to a contradiction. (*See* Lyerly Decl. ¶12 (May 16, 2006) (declaring that the Secret Service does not keep ACR records anywhere other than the searchable database).) However, this minor inconsistency is not enough to rebut the presumption of good faith accorded to agency declarations.
   Note that there is no indication that information was *erased* from the ACR database; if there was—as is the case with the WAVES server—the Court would be more concerned.

inadequate."). Despite plaintiff's claims that it is "astounding" and "preposterous" that defendant's ACR search would not have uncovered other Abramoff visits, the fact that other records were not produced does not in and of itself show that defendant's search was not reasonable.

On the basis of its good-faith declarations, defendant has complied with plaintiff's FOIA request as to ACR records by making a reasonable search. That part of the case is thus moot and will be dismissed for lack of jurisdiction.

### 2.     The WAVES Search

Defendant's claim that its WAVES search was reasonable is premised upon its position that once WAVES records are transmitted to the White House and deleted from Secret Service computers, they cease to be "agency records" subject to plaintiff's FOIA request. "Agency records" are those records that are (1) either created or obtained by the agency, and (2) under agency control at the time the FOIA request was made. *U.S. Dep't of Justice v. Tax Analysts*, 109 S. Ct. 2841, 2848 (1989). Defendant does not contest that WAVES records are created by the Secret Service. Rather, defendant argues that the transferred and deleted WAVES records do not satisfy the "control" prong of the test. The Court disagrees.

This Court has held, in a closely related case, that WAVES records *are* under Secret Service control even after they are transferred and deleted. *See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 527 F. Supp. 2d 76, 92–98 (D.D.C. Dec. 17, 2007) (Lamberth, J.). "[T]his circuit has identified four factors relevant to a determination of whether an agency exercises sufficient control over a document to render it an 'agency record': '(1) the

intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.'" *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988), *aff'd on other grounds*, 492 U.S. 136, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989)).

As in its prior opinion, the Court believes here that, based on those four factors, the transferred and deleted WAVES records remain "under the control" of the Secret Service. The first factor favors defendant, as the Secret Service apparently intended to relinquish control over the records. The second factor weighs against defendant, because the Secret Service seemed able to use or dispose of the WAVES records as it saw fit. Defendant appears to use WAVES records in whatever way it sees necessary to fulfill its protective mission. As for disposal, the only reason defendant gives for deletion of WAVES records after a visit is complete is that they "have no continuing usefulness to the Secret Service, the Secret Service has no continuing interest in preserving or retaining them, and the Secret Service does not control or direct the ultimate disposition of the records." (2d Lyerly Decl. ¶16 (July 7, 2006).) Whether WAVES records are internally erased appears to be an agency choice, control over the records' "ultimate disposition" notwithstanding. Indeed, as plaintiff points out, prior to this "longstanding practice" of internal deletion, defendant chose to keep WAVES records for longer periods of time. (*See* Opp'n to Mot. to Dismiss 4.)

The third factor weighs heavily against defendant because the Secret Service relies

regularly upon the WAVES records. Defendant uses WAVES records "to perform background checks to determine whether, and under what conditions," to admit visitors, and "to verify . . . admissibility at the time of the visit." (2d Lyerly Decl. ¶15 (July 7, 2006).) Finally, the fourth factor also weighs against the defendant, because the WAVES records appear to be integrated into the Secret Service system. Defendant does not seriously argue otherwise. Before WAVES files are transferred to CD-ROM, they are stored on a "server" (*id.* ¶10), which is presumably under agency control, for thirty to sixty days (*see id.* ¶2). The fact that the records were kept in an agency file system at the time that they were being regularly accessed and utilized, even if they were later downloaded onto CD-ROMs, is enough for this Court to consider them integrated into defendant's systems. *See Cons. Fed. of Am. v. Dept's of Agric.*, 455 F.3d 283, 290 (D.C. Cir. 2006) (finding that electronic calendars stored and accessed on agency systems had entered the agency's files).

      Based on this four-factor analysis, the Court concludes that the transferred and deleted WAVES records are under Secret Service control and thus are "agency records" subject to FOIA. Accordingly, for defendant's search to be considered "reasonable," it must have included *all* WAVES records within the relevant period, rather than only those in defendant's possession at the time plaintiff's request was received. Because defendant's search did not include the transferred WAVES records, defendant did not comply with plaintiff's FOIA request. Thus, the controversy over the WAVES records is not moot, this Court still retains jurisdiction, and defendant's Motion to Dismiss must be denied as to this part of the action.

## IV.  CONCLUSION

Defendant has partially complied with plaintiff's FOIA request, and has fully complied with the Court's Stipulated Agreement.  However, defendant has not yet conducted a sufficient search of all WAVES records subject to FOIA, including those which have already been internally deleted and transferred to the White House.  Defendant must move forward and fulfill its obligations under FOIA.

An order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, September 30, 2008.