UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 06-310 (RCL) | |
| ) | | |
| UNITED STATES SECRET SERVICE, ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |
| CITIZENS FOR RESPONSIBILITY AND ) | | |
| ETHICS IN WASHINGTON, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 06-883 (RCL) | |
| ) | | |
| U.S. DEPARTMENT OF HOMELAND ) | | |
| SECURITY, ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION**

Presently before the Court is defendant United States Secret Service's Supplemental Motion [36] for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Because it is unconvinced of either the reasonableness of the Secret Service's search or the FOIA exemptions claimed for Sensitive Security Records, the Court does not consider summary judgment appropriate at this time.

## I. BACKGROUND

Plaintiff Judicial Watch, Inc. made a Freedom of Information Act ("FOIA") request of defendant United States Secret Service on January 20, 2006.[1]  Plaintiff requested "[a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s) of lobbyist Jack Abramoff from the White House." (Compl. 1.)  After defendant did not release any records within the time period provided by FOIA, plaintiffs filed suit on February 22, 2006.  On April 25, 2006, the parties entered into a stipulated agreement wherein defendant agreed to produce "any and all documents responsive to Plaintiff's . . . request, without redactions or claims of exemption," by May 10, 2006.  (Joint Stipulation and Agreed Order 1.)  After querying the two records systems it considered relevant—Access Control Records System ("ACR") records and Workers and Visitors Entry System ("WAVES") records—defendant released two ACR records on May 10, 2006.  After later discovering responsive WAVES records in an unexpected location, defendant released six additional WAVES records.

Defendant has since determined that a heretofore-unsearched category of records, Sensitive Security Records ("SSRs"), should have been considered potentially responsive to plaintiff's FOIA request.  SSRs "are created in the course of conducting additional background checks and other security-related activities regarding certain visitors, who are chosen by the Secret Service based on certain details in their backgrounds and/or the circumstances of their visits." (2d Morrissey Decl. ¶3 (Nov. 30, 2007).)  Persons whose visits are reflected by SSRs "should also be reflected in [WAVES] records." (*Id*.)  Defendant moved for summary judgment,

---

[1] On January 3, 2008, the Court consolidated Civil Actions No. 06-310 and No. 06-883. This motion was initiated in No. 06-310 prior to consolidation.  As a result, it and related filings address only plaintiff Judicial Watch, Inc. and defendant United States Secret Service.

arguing (1) that it has fully complied with plaintiff's FOIA request and (2) that FOIA exemptions protect SSRs from disclosure.

## II.  DISCUSSION

Defendant puts forth several arguments in favor of summary judgment.  First, defendant argues that it has discharged its obligation under FOIA by making a reasonable search.  As to SSRs in particular, defendant claims that, for security reasons, it can neither confirm nor deny the existence of responsive SSRs (a so-called "Glomar response").  Defendant also argues that SSRs are categorically protected by FOIA exemptions 2, 7(E), and 7(F).  The Court finds that defendant has not made a reasonable search, a Glomar response is inappropriate here, and defendant has not convincingly shown that SSRs fall within the claimed exemptions.

### A.     Legal Standard for Summary Judgment

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The party seeking summary judgment bears the initial burden of production as to the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But a genuine issue requires more than "a scintilla of evidence" supporting the nonmoving party; "there must be evidence on which the jury

could reasonably find" for the nonmoving party. *Id.* at 252.

In a FOIA case, summary judgment can be awarded based on information provided by the agency in affidavits or declarations. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.1981). Agency affidavits or declarations establishing the adequacy of a search must be "relatively detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations "are accorded a presumption of good faith." *Id*. "An agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" *Long v. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted)).

B.  **Defendant Has Not Yet Made a Reasonable Search, But Its Exemption Claims Do Not Violate the Stipulated Agreement**

This Court's memorandum opinion and order partially denying defendant's motion to dismiss made clear that defendant has not yet performed the "reasonable" search required by FOIA. *See* Mem. Op. [53] & Order [54] (Sept. 30, 2008). At issue there was whether defendant was required to search WAVES records that had already been transferred to the White House and internally erased. This Court found that the transferred and deleted records were still "agency records," and thus defendant must search those records to fulfill its FOIA obligations. For that reason alone, summary judgment cannot be granted here.

Plaintiff argues in opposition that by claiming exemptions for SSRs defendant has breached the April 2006 Stipulated Agreement. The Court disagrees. The Stipulated Agreement,

signed before any records had been released, did state that defendant would produce "any and all documents responsive to Plaintiff's . . . request, without redactions of claims of exemption" by May 10, 2006. (Joint Stipulation and Agreed Order 1.) But defendant's briefs indicate that it did not at that time consider SSRs to be a potentially responsive category of records. (*See* Supp. Mot. for Summary Judgment 1–2 ("Since defendant conducted its original search and document production (and the related follow-up searches and document production . . . ), it has identified as potentially responsive other categories of records, including . . . [SSRs].").) Because defendant did not consider SSRs to be potentially responsive at the time of the Stipulated Agreement, defendant cannot and should not be punished for claiming exemptions for SSRs.

C.  **Defendant's Glomar Response Is Inappropriate**

Defendant applies the exemptions categorically rather than to individual responsive SSRs because it claims that, for security reasons, it can neither confirm nor deny the existence of responsive SSRs. In the FOIA context, this "neither confirm nor deny" position is called a "Glomar response." *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976) (approving such a response by the CIA regarding the secret "Glomar Explorer" vessel). The Court finds that defendant's Glomar response is inappropriate here.

Defendant maintains that a Glomar response is necessary because acknowledging the existence or absence of particular SSRs, "combined with other such information repeated over time, could lead to the gathering of information concerning whether and when such additional security checks are conducted." (2d Morrissey Decl. ¶4 (Nov. 30, 2007).) That information could then "reasonably be expected to enable individuals to circumvent the law" and evade such

security checks in the future.  (Ulmer Decl.  ¶19 (Nov. 30, 2007).)  The Court is unconvinced that disclosing the mere existence of responsive SSRs would have the effect defendant fears.[2]  It is hard to imagine how knowledge that SSRs exist for certain individuals could be used to piece together the reasons *why* those SSR investigations were triggered.

Defendant's argument that knowledge of the mere existence or absence of SSRs poses a security risk does not hold water.  Thus, defendant cannot use its Glomar response to justify its categorical, rather than specific, application of the claimed exemptions.

**D.     Exemption 2**

Defendant claims SSRs are categorically protected under FOIA Exemption 2.  Exemption 2 covers records that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).   This Circuit has interpreted the "related solely" requirement to be satisfied when a record is "predominantly internal."[3]  *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981).  Two types of predominantly internal records are protected: those "relat[ing] to trivial administrative matters of no genuine public interest"

---

[2]Plaintiff argues that a Glomar response is unavailable to defendant because defendant has already acknowledged the existence of records for Mr. Abramoff's White House visits. *See Wolf v. Central Intelligence Agency*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("[W]hen information has been officially acknowledged, its disclosure may be compelled even over an agency's otherwise valid exemption claim.") (internal quotation and citation omitted).  Plaintiff's acknowledgment argument fails because although defendant has acknowledged that general visit records exist, it has made no acknowledgments as to SSRs in particular.

[3]Plaintiff relies heavily on the word "solely" in arguing that SSRs relate not only to the Secret Service, but also to the White House in general.  (Opp'n 9–10.)  As explained in the text, the Court does not subscribe to such an "all-or-nothing" interpretation of the statutory language. *See Crooker*, 670 F.2d at 1056.

("low 2"), and records of public interest for which "disclosure may risk circumvention of agency regulation" ("high 2"). *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (internal quotations and citations omitted). Defendant claims that most information in SSRs is classified as "high 2," and some is classified as "low 2" (specifically internal letter/number sequences). (Ulmer Decl. ¶¶18, 19 (Nov. 30, 2007).)

The Court agrees with defendant as to the low-2 letter/number sequences—which should be easily segregable if defendant wishes—but not as to the high-2 claims, at least with regard to the information sought. The Court is not convinced that the information plaintiff primarily seeks—the name of a visitor, the dates and times of his visits, and the person(s) visited—would allow even the most dedicated would-be criminal to discern what visitor characteristics trigger an SSR-level security check. Nor would it reveal techniques used during those investigations. These conclusions do not change even if similar SSR requests are aggregated over time.

The cases defendant cites in support of its position are distinguishable from the current case. In *Brunetti v. FBI*, 357 F. Supp. 2d 97 (D.D.C. 2004), this Court held that the FBI's confidential informant numbers were protected as high-2 records because "[a]n individual with knowledge of the people and facts would be able to deduce the identities of the[] sources" by looking at the patterns of information gleaned from certain numbered informants. 357 F. Supp. 2d at 104. But the White House visitor records plaintiff seeks here, even though contained in SSRs, are not as potentially revealing as the informant numbers in *Brunetti*. Any visitor for whom an SSR record is created has innumerable characteristics—family and other relationships, educational and employment history, and psychological profile, just to name a few—such that it is inconceivable that their names, dates of visits, and persons visited would allow one to deduce

what triggered the SSR checks (even if one has outside knowledge of the relevant people and facts).

The other cases cited by defendant are similarly distinguishable. In *Weisenfelder v. Riley*, 959 F. Supp. 532 (D.D.C. 1997), this Court held that trigger figures, error rates, and potential fines used as enforcement tools by the Department of Education were protected as high-2 records. There, however, actual enforcement mechanisms were being requested, while in the instant case plaintiff seeks only basic information on one named investigated visitor. (If plaintiff was requesting a description of, say, the specific characteristics that trigger SSR checks, then *Weisenfelder* would apply—but that is not the case.) In *Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp. 2d 28 (D.D.C. 2004), this Court held that an internal investigation document used by the Secret Service to profile potential threats warranted high-2 protection because it "'contain[ed] law enforcement investigative techniques.'" 307 F. Supp. at 37 (quoting *Crooker*, 670 F.2d at 1062). The same cannot be said about the names and dates requested here.

If there is information included in SSRs—other than visitor names, dates and times of visits, and persons visited—that would more clearly reveal SSR triggers or Secret Service techniques, that information could always be redacted, with explanation, before the responsive SSRs are released. For now, though, it appears that the information plaintiff seeks from responsive SSRs is not protected by Exemption 2.

**E.     Exemption 7(E)**

Defendant also argues that SSRs are categorically protected by Exemption 7(E). Exemption 7(E) protects "records or information compiled for law enforcement purposes" that

"would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Based on the information provided by defendant, the Court disagrees.

The Court agrees with defendant that SSRs are compiled for law enforcement purposes. However, the Court cannot see how disclosure of the information plaintiff seeks would reveal techniques, procedures, or guidelines used by the Secret Service. As described above in relation to Exemption 2, it is difficult to imagine how disclosing a visitor's name, the dates of his visits, and the persons visited would reveal how the Secret Service decided to investigate that visitor or the way in which the investigation was conducted. Defendant's claims to the contrary are so general as to be "conclusory," and as such do not satisfy the standard for protection under Exemption 7(E). *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997).

**F.     Exemption 7(F)**

Defendant argues that SSRs are categorically protected by Exemption 7(F). Exemption 7(F) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual." Because the Court cannot see how the requested information would shed any light on the Secret Service's protective techniques, it cannot take the larger step to understand how disclosure would endanger anyone's life or physical safety.

## III.  CONCLUSION

Defendant has not met the standard for summary judgment.  Defendant must move forward in full compliance with plaintiff's FOIA request as to WAVES records.  As to SSRs, defendant's rationales for its claimed exemptions are insufficient to shield SSRs from plaintiff's FOIA request.

A separate order shall issue this date.


Signed by Royce C. Lamberth, Chief Judge, September 30, 2008.